**Thomas Maurice HANKTON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–98–01188–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

June 8, 2000.

Jay T. Karahan, Houston, for Appellant.

John B. Holmes, Rikke Burke Graber, Houston, for State.

Panel consists of Justices MIRABAL, TAFT, and PRICE.*

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

## OPINION

FRANK C. PRICE, Justice (Assigned).

Appellant, Thomas Maurice Hankton, was convicted by a jury of possession with intent to deliver at least 400 grams of cocaine. Punishment was assessed by the court at 30 years confinement and a fine of $100. In eight points of error, appellant challenges the sufficiency of the evidence and the admissibility of various extraneous offenses. We reverse.

## THE FACTS

Houston police officers Ortaz and Lopez, assigned to the narcotics interdiction task force, were working undercover surveillance at the Greyhound bus station on June 24, 1997 when appellant and Mikea Hankton (M.Hankton) walked into the station. Ortaz noticed appellant because he was carrying a new bag that appeared heavy and contained no identification tags or marks to show ownership. Because these two men fit the profile of drug couriers, Ortaz asked Lopez to watch M. Hankton, while he followed appellant to the waiting area for gate nine.

M. Hankton went to the ticket counter, identified himself as Kenny Jones, and purchased two tickets to New Orleans. He paid with cash. He then went to the gate nine waiting area and handed one of the tickets to appellant. The two men thereafter distanced themselves from each other while in the waiting area. According to Ortaz, appellant appeared nervous and was anxious to get on the bus. His eyes darted around, and he was "antsy." When the two men boarded the bus, appellant put the bag into an overhead bin and took a seat several rows away. The bus was not full, and appellant could have put the bag in the compartment above his own seat. M. Hankton and appellant, from

that point on, did not sit together, speak to each other, or indicate in any way that they knew each other.

The officers decided to approach appellant because he was in possession of the bag. Ortaz took the seat in front of appellant, and Lopez asked appellant if he could speak with him. Appellant nodded in agreement. Lopez identified himself as a Houston police officer and asked appellant if he was traveling alone. Appellant, answering falsely, indicated he was. Lopez asked appellant if he could see his ticket. Appellant was breathing heavily, and his hands were shaking as he handed over the ticket. The name on the ticket was Kenny Jones. Lopez next requested appellant's identification. It was then he learned appellant's name was Thomas Hankton. Lopez asked appellant if he had any luggage, and appellant denied having any. When Lopez asked permission to look into the bag appellant had carried onto the bus, appellant denied it was his, but gave his permission.

Ortaz opened the bag and found a package of white powder that tested positive for cocaine. The Houston Police Department crime laboratory determined the substance to be 1.9 kilograms of 81.1% pure cocaine.

Ortaz testified that the wholesale value of a kilogram of cocaine was from $17,000 to $20,000. He further testified that cocaine is typically sold on the street in .2–gram amounts for about $20. Therefore, the street value of a gram of cocaine is approximately $100, and the street value of a kilogram is about $100,000. Ortaz stated, in his opinion, a person possessing a quantity of cocaine as large as 1.9 kilograms would have it for distribution purposes, not personal use.

Before the State rested its case-in-chief and prior to appellant presenting any evidence in his defense, the State was permitted by the court, over objection, to prove extraneous offenses. The State called as a witness Detective Gabriel Favaroth of the New Orleans Police Department. He testified that on January 30, 1997, while working undercover surveillance, he observed appellant, whom he knew as "Squirt," selling narcotics on a street corner in New Orleans. He relayed this information to other officers. Officer Ceravolo responded to the information, went to the location, and detained appellant. When he patted him down, Ceravolo found what appeared to be powdered and crack cocaine packaged in 17 small bags secreted in appellant's waistband. Appellant also had $175 in cash. A chemist for the New Orleans Police Department crime laboratory tested the substance and determined that it was 33 grams of cocaine.

On that same date, Sergeant Bruce Harrison of the Jefferson Parish Sheriff's Office obtained a search warrant for appellant's apartment in Metairie, Louisiana, a suburb of New Orleans.[1] A total of 509.59 grams of cocaine and $24,155 in cash was seized from that location. The officers also found plastic baggies with the corners cut off. Harrison testified, "The corners on baggies are generally used to package cocaine."

## SUFFICIENCY OF THE EVIDENCE

■ In points of error one and two, appellant challenges the legal and factual sufficiency of the evidence to support his conviction. He argues the State did not prove he was aware that the bag he carried onto the bus contained contraband.

■ When considering a legal sufficiency challenge, we examine the evidence and consider all reasonable inferences therefrom in the light most favorable to the verdict to determine if the elements of the offense have been established. *Jackson v.*

1. Appellant shared the one-bedroom apartment with Kim Hambeaux. Mail addressed to appellant and "documentation linking both [appellant] and Hambeaux to the residence" was found by officers in the apartment. Appellant never challenged the issue of possession before the trial court.

*Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Wilkerson v. State,* 881 S.W.2d 321, 324 (Tex.Crim.App. 1994). We review factual sufficiency by examining all of the evidence to determine if the verdict is so contrary to the overwhelming weight of the evidence that it is clearly wrong and manifestly unjust. *Clewis v. State,* 922 S.W.2d 126, 129 (Tex. Crim.App.1996). In order to establish the offense of unlawful possession of a controlled substance, the evidence must show that the accused exercised actual care, control, or custody of the contraband, was conscious of his connection with it, and knew that it was contraband. *Brown v. State,* 911 S.W.2d 744, 747 (Tex.Crim.App. 1995).

The record reflects that officers Lopez and Ortaz observed appellant because his actions and conduct fit the profile of a drug courier. Appellant entered the bus station carrying a bag that contained 1.9 kilograms of cocaine. The bag was new, appeared heavy, and was without identification tags or marks to indicate ownership. It remained exclusively in appellant's possession until he subsequently relinquished custody to Officer Lopez.

When appellant entered the station, he was accompanied by another individual named M. Hankton. Appellant walked through the main lobby and went to an area in the back nervously awaiting to enter the bus destined for New Orleans. His companion, using a false name, purchased, with cash, two tickets to New Orleans. After his companion handed appellant his ticket, the two distanced themselves from each other until appellant was subsequently arrested.

As appellant entered the bus, he placed the bag into an overhead bin and selected a seat in another area of the bus. The bus was not crowded, and the seat appellant selected had an empty overhead compartment.

Officer Lopez approached appellant and identified himself as a police officer. Appellant, who was already nervous, began shaking and breathing heavily. He denied to Lopez that he was traveling with a companion or that he was carrying any luggage. Although he denied the bag belonged to him, he gave Lopez permission to look inside. A search of the bag revealed it contained almost two kilograms of cocaine.

Ortaz offered unchallenged testimony as to the street value of the amount of cocaine recovered from the bag. He further testified that no person possessing that amount of cocaine would have it for personal consumption. Instead, he stated that the intent for possessing that amount of cocaine would be for distribution purposes.

The State, through the testimony of several Louisiana law enforcement officers and chemists, proved that appellant was a drug dealer in New Orleans. Furthermore, he supplied himself for his street sales, as evidenced by the one-half kilogram of cocaine the officers recovered during a search of appellant's home.

Appellant, during trial, offered no evidence in his own defense to explain, challenge, or contradict any proof of possession, intent, or knowledge presented by the State on guilt. Appellant rested his case immediately after the State rested its case.

We therefore conclude from this evidence that any rational trier of fact could have found beyond a reasonable doubt the essential elements of possession with intent to deliver at least 400 grams of cocaine. Furthermore, we hold the verdict was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust.

We overrule points of error one and two.

## EXTRANEOUS OFFENSES

In points of error three through eight, appellant contends that the trial court erred in admitting over objection evidence of extraneous offenses during the State's

case-in-chief. Specifically, he argues that the evidence was not relevant and that its probative value was substantially outweighed by unfair prejudice, undue delay, and confusion of the issues. *See* Tex.R. Evid. 403, 404(b).[2]

Before the testimony of the Louisiana law enforcement officers was offered, a hearing to determine its admissibility was conducted out of the jury's presence. The prosecutor summarized the proposed evidence and argued it was admissible to prove "knowledge and motive, what [appellant] planned on doing with that cocaine once he got it to Louisiana." Appellant's counsel argued the evidence was not relevant at this point in the trial, and that even if it was, its prejudicial effect far outweighed its probative value, citing Rules of Evidence 403 and 404(b). He further informed the court that appellant's only effort on defense would be an attempt to show that the officers were mistaken about whether or not this appellant was the person who carried the bag into the station and onto the bus and kept it under his exclusive control until confiscated by Lopez. He stated he was not going to challenge intent or knowledge.

The trial court overruled appellant's objections to the extraneous offenses and permitted the State to offer the testimony. The trial court did, however, instruct the jury, both orally and in the court's charge, that it could only consider the extraneous offense evidence in determining the motive, intent, plan, or knowledge in connection with the offense and for no other purpose. Appellant, at the conclusion of the State's evidence, rested his case without presenting any testimony or evidence of any kind.

## A. The Law

 The general rule is that an accused may not be tried for being a criminal generally. *Couret v. State,* 792 S.W.2d 106, 107 (Tex.Crim.App.1990); *Dabney v. State,* 816 S.W.2d 525, 527 (Tex.App.— Houston [1st Dist.] 1991, pet. ref'd). Evidence of other crimes, wrongs, or acts is not admissible if it does nothing more than establish the bad character of an accused person in order to show action in conformity therewith. Tex.R. Evid. 404(b). The trial court has no discretion to admit such evidence over objection. *Montgomery v. State,* 810 S.W.2d 372, 387 (Tex.Crim.App. 1991) (opin. on reh'g).

Extraneous offense evidence may be relevant apart from its tendency to show character conformity, such as for purposes of proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Tex.R. Evid. 404(b). Evidence is "relevant" that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex.R. Evid. 401. All relevant evidence is admissible except as otherwise provided by the rules. Evidence which is not relevant is inadmissible. Tex.R. Evid. 402. It is incumbent upon the proponent of the evidence to satisfy its relevance in order to allow the trial court to determine if its probative value substantially outweighs the inflammatory aspects

---

**2.** Rule 403 reads as follows:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

Tex.R. Evid. 403.

Rule 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

Tex.R. Evid. 404(b).

of unfair prejudice caused by the introduction of the damaging evidence. Tex.R. Evid. 403.

■ If the proof necessary to establish an elemental fact of the primary offense cannot be inferred from the act itself, or if the accused presents evidence to rebut the inference of such fact, evidence of extraneous offenses can be admissible if they are relevant to the issue and their prejudice does not outweigh the probative value of the evidence. *Johnson v. State,* 932 S.W.2d 296, 302 (Tex.App.—Austin 1996, pet. ref'd); *Hurtado v. State,* 722 S.W.2d 184, 188 (Tex.App.—Houston [14th Dist.] 1986, pet. ref'd). However, when the elemental fact can be inferred from the act itself and the defense does not contest this element, admission of an extraneous offense oftentimes is cumulative of the proof established and serves only to demonstrate the accused's bad character. *See Albrecht v. State,* 486 S.W.2d 97, 101 (Tex. Crim.App.1972); *Jones v. State,* 481 S.W.2d 900, 902 (Tex.Crim.App.1972).

■ Appellate courts measure the trial court's rulings concerning the admissibility of extraneous offense evidence under both Rules of Evidence 403 and 404(b) by an abuse of discretion standard. *Montgomery,* 810 S.W.2d at 391. As long as the trial court's ruling was at least within the zone of reasonable disagreement, the appellate court will not interfere with the ruling. *Id.*

### B. Analysis under Rule 404(b)

The State asserts that the evidence of appellant's narcotics activity in New Orleans was relevant to prove: (1) his knowledge of the cocaine in the bag, and (2) his intent to deliver. We focus our attention on the State's compelling need to introduce the extraneous offense evidence. If the evidence offers some relevance toward establishing the existence of either intent or knowledge, we test its probativeness against the unfair prejudice caused by its tendency to prove bad character.

■ Regarding the element of "intent to deliver," the State presented expert testimony from Ortaz, who had a long history of dealing with narcotics traffickers through his training and investigative efforts as a police officer. He explained about the wholesale value of a kilogram of cocaine being worth between $17,000 and $20,000. He discussed the distributive efforts of street level dealers packaging .2 of a gram of cocaine to sell for $20, thus making one gram of cocaine worth $100. Simple arithmetic would put a value of approximately $190,000 on the 1.9 kilograms recovered here. Such economics, as well as the large amount of cocaine represented here, would only suggest the holder of the substance would possess it for the primary purpose of distributing it. Ortaz's expert testimony was never criticized, challenged, or rebutted by the defense. Not only is this the practical and philosophical opinion of the expert, it is the common sense approach as well.

We have consistently held that possession of large quantities of cocaine, corroborated by expert testimony, is sufficient to prove intent to deliver. *Morrow v. State,* 757 S.W.2d 484, 487–88 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd); *Pitts v. State,* 731 S.W.2d 687, 692 (Tex.App.—Houston [1st Dist.] 1987, pet. ref'd). We therefore hold that by no reasonable perception of common experience can it be concluded that the questioned extraneous offense testimony has a tendency to make the existence of the element "intent to deliver" more probable than it otherwise would be without the testimony. The trial court therefore abused its discretion by admitting the evidence on the issue of intent.

We next address the State's compelling need to introduce the extraneous offense evidence on the issue of knowledge that the substance in the bag was cocaine. If we find the questioned evidence was relevant with sufficient probative value, our analysis regarding the issue of intent is moot.

■ To prove the element of knowledge, the State relied upon testimony about the nervous and suspicious conduct of appellant, as described by the two investigating officers who observed the entire incident. Although the credibility of the officers went unchallenged, the evidence remained circumstantial as it indirectly reflected on appellant's knowledge that the contents of the bag contained, among other items, cocaine.

The testimony regarding the extraneous offenses did have a tendency to show a generalized knowledge about small and large amounts of cocaine. This in turn would support an inference that if appellant did possess the bag and appeared nervous as he awaited the departure of the bus to New Orleans, that he knew the bag contained cocaine. We therefore hold that the trial court's ruling on admissibility was within the zone of reasonable disagreement and, thus, was not an abuse of discretion when it found that the extraneous offense evidence had relevance apart from character conformity.

## C. Analysis under Rule 403

■ Appellant, in addition to his complaint under Rule 404(b), voiced an objection to the evidence based on Rule 403. We now review whether the probative value of the extraneous evidence outweighed any possibility of prejudice.

■ Prejudice is not solely a function of whether the jury would likely convict appellant just for being a criminal generally. *Montgomery*, 810 S.W.2d at 395. Evidence of "other crimes, wrongs, or acts" may also create "unfair prejudice" if under the circumstances, a jury would be more likely to draw an impermissible character conformity inference than the permissible inference for which the evidence is relevant, or if the evidence otherwise distracts the jury and invites them to convict on a moral or emotional basis rather than as a reasoned response to the relevant evidence. *Id.*

The State elicited testimony of appellant's other crimes during its case-in-chief. It took almost as much time developing that testimony as it did all of the remainder of its evidence.

The State, in the primary case, presented evidence that appellant was in exclusive possession of a bag that contained a substance with a wholesale value of between $34,000 and $40,000. To avoid suspicion that something of value was inside, the bag was unsecured. It had no identification tags and contained, in addition to the cocaine, children's clothing so nothing could be traced to appellant. He was traveling under a common, nondescript false name to further mask his identification in case someone checked the passenger list. He behaved suspiciously and nervously, both in the station and on the bus. He was anxious to enter the bus and take his seat. Once on the bus, he placed the bag into an overhead compartment and sat away from the bag in another area of the bus. This would distance him from the bag so no one, at either city, could place him in possession of the bag. He lied to the officers as to whether he was traveling with a companion or carrying any luggage. He told the officers he had been in town approximately four days, yet had nothing to indicate he had been in town longer than one day which, according to the officers, is the length of time a drug courier spends when purchasing a large supply of contraband.

Appellant offered no defense to challenge the State's evidence or its obvious implications. His cross-examination of the officers was ineffective to create doubt that they were mistaken about appellant's being in possession of the bag.

Under these circumstances, it should be readily apparent to the jury that the person who possessed the bag knew of its contents. The State had minimal compelling need to show that appellant possessed and sold cocaine in New Orleans, either to prove knowledge of the substance inside of

the bag or to shore up testimony of the officers.

Because all factors militate in favor of a finding that the probativeness of the evidence was substantially outweighed by the danger of unfair prejudice, we conclude that the trial court abused its discretion to admit it. We next address the issue of harm.

## D. Harm

 We first determine whether the error was of constitutional magnitude. Constitutional error requires reversal unless we can determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX.R.APP. P. 44.2. All other errors not affecting substantial rights must be disregarded. *Id.* A violation of the evidentiary rules that results in the erroneous admission of evidence is treated as nonconstitutional error. *Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App.1998); *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997); *Tate v. State,* 988 S.W.2d 887, 890 (Tex. App.—Austin 1999, pet. ref'd). We must therefore address whether the error affected appellant's substantial rights.

 A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State,* 953 S.W.2d at 271. We examine the record in its entirety. *Id.* Four Louisiana law enforcement officers and two chemists testified regarding appellant's hand-to-hand deliveries of cocaine on a New Orleans street corner and the recovery of over 500 grams of cocaine, and more than $24,000 in cash, from an apartment appellant shared with another person. The prosecutor's jury argument included the following remarks:

> I mean, in addition to that there's six people come [sic] here from either the New Orleans Police Department or the Jefferson Parish Sheriff's Department and basically tell you they know Squirt. They know what he's about and they told you the cases that they have on him.

And one of those is for half a kilo almost.... And he just happened to have another $85,000 worth of cocaine at his apartment along with $27,000 [sic] in cash.

You know what he was doing here. You know where he was taking it. You know how he was going to package it. You even know the intersection in New Orleans where he sells it.

\* \* \*

I mean, finding anybody guilty, yes, that is a hard decision, but factually speaking this case is easy. Five months earlier he's caught dealing in narcotics in New Orleans, search warrant that same day reveals all the packaging for it, all the money from his proceeds. He was coming to Houston, the source city, as Lopez and Ortaz told you, to buy his cocaine here, get in that bus, take it back on his one-way ticket, under that fake name to New Orleans, a demand city, to do exactly what you heard about today he does there in New Orleans.

## E. Conclusion

 It is clear from the prosecutor's remarks during argument that he was focusing his attention on appellant's criminal activities in New Orleans to suggest that appellant was guilty in the primary case. The prosecutor appears to have been relying on the prejudice and stigma of appellant being an established drug dealer to cause the members of the jury to react from a moral or emotional basis instead of from a rational and logical basis as the trial court judge instructed them both orally and in the court's charge when he told them they could not consider the questioned evidence on the issue of guilt, but only for the limited purpose of establishing the elements of intent and knowledge.

We cannot say that the error did not have a substantial and injurious effect or influence in determining the jury's verdict.

Accordingly, we sustain points of error three, four, five, six, seven, and eight.

We reverse the judgment and remand the case to the trial court.