Opinion issued December 27, 2002







                                                             




  


In The
Court of Appeals
For The
First District of Texas
 

 
 
 
NO. 01-00-01236-CR
____________
 
RODERICK DANNY BASCOM, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 178th District Court
Harris County, Texas
Trial Court Cause No. 846254
 

 
 
O P I N I O N
          A jury convicted appellant, Roderick Danny Bascom, of aggravated sexual
assault of a child


 and assessed punishment at 12 years confinement and a fine of
$6,500. We affirm.
Facts
          On August 25, 1999, J.G. and T.F. were walking home from their bus stop after
school. They observed a Hispanic male wearing a white shirt and khaki pants
“strutting” down the street. T.F. recognized the man as appellant. She knew
appellant because she had met him on three previous occasions and was aware he
walked with a distinctive “strut.” The girls then separated and walked to their own
homes. J.G. observed appellant turn and walk down her street but, when she turned
the corner, he had disappeared.
          Shortly after J.G. entered her home, appellant opened the front door, entered
the house, and demanded money and jewelry. Appellant forced J.G. to the floor and
taped her wrists behind her back. He carried her into her brother’s bedroom where
he covered her head with a blanket, raised her skirt, and removed her shorts and
underwear. J.G. struggled and broke free. She ran back into the living room where
she fell to the floor. Appellant re-taped her wrists, taped her mouth shut, and re-covered her head. Appellant sexually assaulted J.G. by repeatedly penetrating her
anus and vagina with his fingers and licking her anus and vagina while masturbating. 
Appellant attempted to penetrate her anus and vagina with his penis, but was unable
to maintain an erection. Appellant then placed J.G. on her back, began licking her
breasts and again penetrated her vagina with his fingers. He left when he heard J.G.’s
brothers walking toward the front door.
          J.G. and her brothers ran to a neighbor’s house and called the police. J.G. was
interviewed by police and taken to the hospital where she was examined for evidence
of the assault. She was bruised, scratched, and suffered from vaginal bleeding.           Officer Glenn West photographed the crime scene and collected physical
evidence, including fingerprints from the back door and the tape used to bind J.G.’s
wrists and head. Joseph Chu, a Houston Police Department criminalist, analyzed the
evidence from the crime scene and later determined there was no DNA evidence
consistent with appellant’s DNA. Two days after the assault, J.G. gave Detective
Michaeline J. Frost a written statement which included a description of appellant. 
Her description was used by a police sketch artist to produce a drawing of appellant.
          On September 14, 1999, Houston Police Officer John C. Salazar was
dispatched to appellant’s house to investigate a disturbance involving appellant
assaulting his mother. Appellant left the house before Salazar arrived, but appellant’s
mother showed Salazar appellant’s driver’s license. When Salazar returned to the
police station to prepare his report, he saw a flyer which contained the sketch of
J.G.’s attacker. He immediately noticed the similarity between the sketch and
appellant’s driver’s license picture. Salazar called Detective Frost to tell her about
the similarity and give her appellant’s name and birth date. 
          Appellant’s photograph was placed in a photographic array and shown to T.F.,
who identified appellant’s photo as representing the person she saw in the
neighborhood just prior to the offense. Thereafter, appellant was arrested and
subsequently placed in a line-up. J.G., while viewing the line-up, identified appellant
as her assailant. A search of appellant’s home revealed pornographic videotapes and
pictures and a “penis pump.”
           Elvia Diaz, J.G.’s neighbor, initially identified appellant from a photographic
array and told Frost she saw appellant near J.G.’s house on the day of the assault. At
trial, Diaz stated she saw two men in a white, four-door car near J.G.’s house on the
afternoon of the assault, and that one of the men wore a white t-shirt and khaki pants. 
Contrary to her pre-trial statement, Diaz testified she was not sure whether appellant
and the man she saw outside J.G.’s house were the same person. She also identified
the photograph of appellant’s mother’s vehicle as being similar to the car she saw on
the day of the assault.
          In an effort to impeach Diaz, the State presented Officer Luis Baez who
testified he interviewed Diaz on the day of the assault and she told him she saw a
young, Hispanic male, who looked like appellant, drive to J.G.’s house in a white,
four-door vehicle, go to the front door, return to the automobile, and drive away. 
Baez testified that Diaz told him the car returned a short time later and the same man
got out.
Impeachment Testimony
          In his first point of error, appellant claims the trial court erred in admitting
hearsay statements for impeachment purposes under former Rule 613(a) of the Texas
Rules of Evidence. See Tex. R. Evid. 613(a).


 Specifically, he argues that, before
the State could offer Baez’s testimony to impeach Diaz, the prosecutor had to
confront Diaz with the statement and afford her the opportunity to explain or deny the
statement.
          The admission of evidence is reviewed under an abuse of discretion standard. 
See Montgomery v. State, 810 S.W.2d 372, 379-80 (Tex. Crim. App. 1990); Roberts
v. State, 29 S.W.3d 596, 600 (Tex. App.—Houston [1st Dist.] 2000, pet. ref’d). As
long as the trial court’s ruling was within the “zone of reasonable disagreement,”
there is no abuse of discretion, and we must uphold the trial court’s ruling. Rachal
v. State, 917 S.W.2d 799, 807 (Tex. Crim. App. 1996); Roberts, 29 S.W.3d at 600.
          The State argues appellant’s objection at trial is not the same as his argument
on appeal. See Tex. R. App. P. 33.1(a). We disagree. At trial, appellant objected on
hearsay grounds to Baez’s testimony regarding what Diaz had told him. On appeal,
he makes the same claim.
          Over objection, Baez was permitted to testify that Diaz told him she saw a car
pull up to J.G.’s house, a Hispanic male who looked like appellant got out of the
automobile, went to the front door, then returned to the vehicle and left. Baez stated
Diaz told him the vehicle returned a short time later and the same man exited, walked
to J.G.’s front door, then walked across the street and went behind a blue Chevy
Tahoe truck. During the testimony, appellant’s attorney re-urged the hearsay
objection, and the trial court, after overruling the objection, stated that Baez’s
testimony was admitted as impeachment of Diaz.
          Neither the State nor appellant dispute that, but for an exception, Officer
Baez’s testimony constituted hearsay. The issue is whether Officer Baez’s testimony
was proper impeachment testimony under Texas Rule of Evidence 613(a). Rule
613(a) provides:
In examining a witness concerning a prior inconsistent statement made
by the witness, whether oral or written, and before further cross-examination concerning, or extrinsic evidence of, such statement may
be allowed, the witness must be told the contents of such statement and
the time and place the person to whom it was made, and must be
afforded an opportunity to explain or deny such statement.

Tex. R. Evid. 613(a). 
          Here, Diaz was not questioned about what she told Officer Baez and was not
permitted to explain or deny the statement. We hold that Baez’s testimony
concerning Diaz’s statements to him was not proper impeachment testimony. See id.
          A violation of the evidentiary rules that results in the erroneous admission of
evidence is treated as nonconstitutional error; Tex. R. App. P. 44.2(b); Hankton v.
State, 23 S.W.3d 540, 548 (Tex. App.—Houston [1st Dist.] 2000, pet. ref’d). Under
Rule 44.2(b), we are to disregard any error unless it affects appellant’s substantial
rights. Id. A substantial right is affected when the error had a substantial and
injurious effect or influence on the jury’s verdict. Hankton, 23 S.W.3d at 548. The
improper admission of evidence does not constitute reversible error if the same facts
are shown by other unchallenged evidence. Marcel v. State, 64 S.W.3d 677, 679
(Tex. App.—Houston [1st Dist.] 2001, pet. ref’d).
          Here, other evidence showed appellant was at or near J.G.’s house near the time
of the assault. T.F. testified she saw appellant walking near J.G.’s house shortly
before the assault. J.G. positively identified appellant as her attacker. We hold that,
because other testimony showed appellant was J.G.’s attacker, Baez’s testimony did
not have a substantial, injurious effect on the verdict. See Tex. R. App. P. 44.2(b).
          We overrule appellant’s first point of error.
          In his second point of error, appellant argues the trial court erred because it did
not give a limiting instruction to the jury that it could consider Officer’s Baez’s
testimony only for impeachment purposes. Because we have already held that Baez’s
testimony did not result in reversible error, we need not consider this argument.
          We overrule appellant’s second point of error.
Evidence of Similar Crimes
          In his third point of error, appellant argues the trial court erred when it did not
allow him to introduce evidence of similar sexual assaults committed in the Pasadena
area. He contends that, because his defense at trial was based on the theory of
wrongful identification, the trial court’s refusal to admit evidence of these extraneous
offenses was reversible error.
          We examine the trial court’s ruling under an abuse of discretion standard. 
Montgomery, 810 S.W.2d at 372. Evidence of extraneous crimes normally is
inadmissible unless it meets the following two-prong test: (1) the offense is relevant
to a material issue in the case, other than the defendant’s character; and (2) the
probative value of the evidence is not substantially outweighed by the danger of
unfair prejudice. Johnson v. State, 6 S.W.3d 709, 712 (Tex. App.—Houston [1st
Dist.] 1999, pet. ref’d). Evidence of extraneous crimes may be admissible to show
motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of
mistake or accident. Tex. R. Evid. 404(b).
          The State filed, and the trial court granted, a motion in limine which prevented
appellant from asking questions about three similar sexual assaults without first
receiving permission from the trial court. During a hearing to test the admissibility
of the evidence, appellant’s attorney questioned Frost in an attempt to establish that
the circumstances surrounding the Pasadena sexual assaults were quite similar to
those involving J.G.’s assault, and appellant had not been identified by the Pasadena
victims. Frost testified that, in the Pasadena assaults, tape was wrapped around the
victims’ heads, underwear was missing from the crime scenes, the assaults took place
after school, the Pasadena assailant inserted his fingers into the vagina and anus of
his victims, and the attacker had “a problem erecting.” She also testified that
appellant was a “strong suspect” in the Pasadena cases. The trial court, upon learning
Frost was not the investigating officer and did not have personal knowledge of the
Pasadena cases, refused to allow her to testify about the extraneous offenses. The
ruling established Frost’s knowledge as hearsay that did not qualify as any exception
for admissibility purposes.
          Appellant contends that the similarities between the offenses, and the failure
of the victims to identify appellant as their assailant, help demonstrate he was
wrongfully identified in this case. He relies on Renfro v. State, 822 S.W.2d 757 (Tex.
App.—Houston [14th Dist.] 1992, pet. ref’d) in support of his argument. In Renfro,
the trial court refused to admit evidence that the appellant had been exonerated by the
victims in two strikingly similar and contemporaneous cases. Id. at 758. The court
concluded that, in the case in chief, Renfro’s alibi defense was “well supported,” in
part, because the victims saw him for an “extremely short . . . duration from a good
distance away.” Id. The Renfro court held that, under those facts, the trial court’s
refusal to admit the evidence of the extraneous offenses was reversible error. Id.
          Although Renfro and appellant both relied on a defense of wrongful
identification, appellant’s case is distinguishable. First, whereas Renfro was
positively exonerated, here, the Pasadena victims simply could not identify appellant
as the attacker and police had not eliminated appellant as the assailant. Second,
unlike Renfro, appellant did not demonstrate that the offenses were sufficiently
similar because Houston Police Officer Frost did not have sufficient personal
knowledge of the Pasadena assaults, which were investigated by the Pasadena police
and not the Houston Police Department. Last, unlike Renfro’s, appellant’s alibi was
not well supported by the evidence. Here, appellant presented testimony that he was
a pallbearer for his uncle in Lubbock, Texas on August 20, and returned to Houston
on August 21 or 22. Appellant’s brother testified appellant was “probably” still in
Lubbock on August 25, the date of the assault. The testimony that appellant was
“probably” out-of-town falls short of the alibi defense presented in Renfro.
          We conclude the trial court did not abuse its discretion when it excluded
evidence of other sexual assaults committed in Pasadena.
          We overrule appellant’s third point of error.
Legal Sufficiency
          In his fourth point of error, appellant argues the evidence was legally
insufficient to prove he committed aggravated sexual assault because J.G. was not in
fear of imminent, serious bodily injury or death.
          In reviewing legal sufficiency, we view the evidence in a light most favorable
to the verdict, and ask whether a rational trier of fact could find the essential elements
of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99
S. Ct. 2781, 2789, (1979); Valencia v. State, 51 S.W.3d 418, 423 (Tex.
App.—Houston [1st Dist.] 2001, pet. ref’d). A person commits, in one manner, the
offense of aggravated sexual assault of a child if that person (1) intentionally or
knowingly causes the penetration of the anus or female sexual organ of a child by any
means, and (2) the person, by acts or words, places the victim in fear that death,
serious bodily injury, or kidnapping will be imminently inflicted on any person. Tex.
Pen. Code Ann. §§ 22.021(a)(1)(B)(i), (a)(2)(A)(ii) (Vernon Supp. 2002).


 
Appellant only challenges the sufficiency of the evidence as to the second element
of the offense.
            The defendant’s conduct is examined to determine whether that conduct was
the producing cause of the victim’s fear and whether the subjective state of fear was
reasonable in light of such conduct. Lewis v. State, 984 S.W.2d 732, 735 (Tex.
App.—Fort Worth 1998, pet. ref’d); Elkins v. State, 822 S.W.2d 780, 782 (Tex.
App.—Houston [14th Dist.] 1992, pet. ref’d). The subjective fear of the victim alone
is not sufficient to establish the aggravating factor required in section
22.021(a)(2)(A)(ii). Lewis, 984 S.W.2d at 735. The State must show that the victim’s
fear was the proximate result of objective conduct employed by the defendant. Id. 
It is not necessary that a threat be communicated verbally. Elkins, 822 S.W.2d at 783. 
Whether or not a complainant was placed in fear of death or serious bodily injury is
a fact to be determined by the jury. Id.
          Here, J.G. testified she was scared because appellant was violent, pushed her
around, and tackled her during the assault. She testified she thought appellant was
going to kill her when he taped her mouth and head, making it difficult for her to
breathe, and also when he told her “things would get worse” if she did not cooperate. 
We conclude, viewing the evidence in the light most favorable to the verdict, the
evidence was legally sufficient to show appellant placed J.G. in fear that he would
imminently inflict death or serious bodily injury to her.
          We overrule appellant’s fourth point of error.
Factual Sufficiency
          In appellant’s fifth point of error, he argues the evidence was factually
insufficient to prove appellant’s identity as the man who sexually assaulted J.G. In
reviewing factual sufficiency, we examine all of the evidence neutrally and ask
whether proof of guilt is so obviously weak or greatly outweighed by contrary proof
as to indicate that a manifest injustice has occurred. King v. State, 29 S.W.3d 556,
563 (Tex. Crim. App. 2000); Valencia, 51 S.W.3d at 423. In conducting this analysis,
we may disagree with the jury’s determination, even if probative evidence supports
the verdict, but we must avoid substituting our judgment for that of the fact finder. 
King, 29 S.W.3d at 563. The reviewing court should not substantially intrude upon
the jury’s role as the sole judge of the weight and credibility of witness testimony. 
Vasquez v. State, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002).
          Appellant argues the evidence was factually insufficient because (1) the only
evidence linking appellant to the crime was J.G.’s identification of appellant, (2) there
was evidence he was in Lubbock when J.G. was assaulted, (3) his fingerprints were
not recovered from J.G.’s house, (4) police did not find J.G.’s panties in his home, (5)
Diaz did not identify him as the man she saw near J.G.’s home, and (6) J.G. did not
notice tattoos on her attacker’s body, and appellant has several tattoos.
          Three witnesses placed appellant at or near J.G.’s house on the afternoon of the
assault. J.G. identified appellant as her attacker. T.F. knew appellant and saw him
wearing a white shirt and khaki pants walking near J.G.’s house. Diaz’s
uncontroverted testimony also showed that, in the vicinity of J.G.’s house, she saw
a man dressed in a white shirt and khaki pants standing next to a vehicle that looked
like appellant’s mother’s automobile. Diaz also picked appellant’s photo from a
police photo array. The jury was free to believe that, based on Baez’s testimony, Diaz
also saw appellant drive to J.G.’s house, check the front door, leave, return, and hide
across the street as she had previously told the police. This testimony competes with
Benitez’s testimony that appellant was “probably” in Lubbock when J.G. was
assaulted because he had attended a funeral there five days before the assault.
          Appellant contends he was wrongfully identified because he has tattoos and
J.G. testified her attacker did not. His grandmother verified that appellant has
numerous tattoos which are visible when he wears short-sleeved shirts. J.G. testified
that she did not notice tattoos and Detective Frost testified that, when she spoke with
appellant, she did not notice his tattoos. Furthermore, the jury heard testimony that
a penis pump was recovered from appellant’s home and J.G.’s attacker could not
maintain an erection when he tried to penetrate her.
          We conclude, after a neutral review of all the evidence, that the proof of guilt
is not so obviously weak or greatly outweighed by contrary proof as to indicate that
a manifest injustice has occurred. King, 29 S.W.3d at 563.
          We overrule appellant’s fifth point of error.
Conclusion
          We affirm the judgment.


                                                                        Frank C. Price



                                                                        Justice

Panel consists of Justices Mirabal, Taft, and Price.
Justice Taft concurring.
Do not publish. Tex. R. App. P. 47.