NO. 07-07-0389-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

SEPTEMBER 29, 2009
_____

ROYCE JIMINEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2007-417,074; HONORABLE CECIL G. PURYEAR, JUDGE
_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant Royce Jiminez appeals from his conviction of indecency with a child and the resulting sentence of imprisonment for a term of eight years in the Institutional Division of the Texas Department of Corrections. Via five issues, appellant contends the trial court reversibly erred. We affirm.

Background

By a July 2007 indictment, appellant was charged with six counts of indecency with a child, all alleging contact between appellant and a boy then almost seven years old.[1] Five of the six counts alleged appellant touched the child's genitals. Those five counts alleged the touchings occurred on or about March 14 (count I); March 1 (count III); February 1 (count IV); February 15 (count V); and January 1 (count VI), all in 2006. Count II of the indictment alleged appellant caused the child to touch appellant's genitals, on or about March 14.

After the close of the evidence, the court submitted each of the six counts to the jury with a separate verdict form. The jury found appellant guilty of counts I through IV and not guilty of counts V and VI. After punishment evidence, the jury assessed punishment of imprisonment for eight years on each count, and the court sentenced appellant accordingly, ordering the sentences served concurrently.

Appellant does not challenge the sufficiency of the evidence supporting his convictions, so we will recite only so much of the evidence as is necessary to an understanding of the issues presented. Both appellant and the boy, eight years old by the time of trial, testified. It suffices at this point to say that the State's evidence was detailed concerning the incidents on March 14, 2006, which the testimony showed occurred in a

---

[1] *See* Tex. Penal Code Ann. § 21.11 (Vernon 2001). The State abandoned before trial a seventh count alleging indecency by exposure.

2

restroom at a clinic.[2] Appellant acknowledged he and the boy went to the restroom at the same time at the clinic, but disputed the boy's version of the events that occurred there. The evidence regarding the touchings alleged to have occurred on or about the other dates was more general. The boy testified appellant fondled him while they drove in appellant's vehicle. He described some details of the fondlings, and said the same thing happened more than once. Although it was undisputed the boy on some occasions had ridden alone in the vehicle with appellant, a close family friend, appellant denied he ever fondled the boy.

Analysis

Election

In appellant's first two issues, he contends the trial court erred by refusing to require the State to timely elect the acts on which it relied for conviction.[3] By his first issue, appellant contends this refusal denied him notice in violation of his due process and due course of law rights, and by his second issue contends it denied his right to a unanimous jury verdict.

---

[2]The evidence included, for example, testimony by a nurse concerning appellant's visit to the clinic on March 14, and her memory that the boy accompanied appellant.

[3]Appellant preserved error by his motions to require election. Absent such a motion by the defendant, the State is not required to make an election. *O'Neal v. State,* 746 S.W.2d 769, 771 (Tex.Crim.App. 1988)*; Crawford v. State,* 696 S.W.2d 903. (Tex.Crim.App. 1985).

3

As a general rule, when the State's evidence shows multiple instances of conduct conforming to a single indictment allegation, on proper request the State must elect the instance on which it will rely for conviction. *Martinez v. State,* 225 S.W.3d 550, 555 (Tex.Crim.App. 2007); *O'Neal v. State,* 746 S.W.2d 769, 771 (Tex.Crim.App. 1988). Appellant's contentions concerning election have no application to count II, which was the only count alleging appellant caused the boy to contact his genitals. The only evidence supporting that count showed the incident happened on March 14. Nor do we think appellant's issues concerning election have application to count I, which alleged appellant had contact with the boy's genitals on March 14. The record is abundantly clear that the State relied on its evidence of the events of March 14 to show appellant's guilt under count I.

The other four counts were identical except for their on-or-about dates, and the State did not attempt to show the specific date on which any of the vehicle incidents occurred. After the State rested its case-in-chief, appellant asked the court to require the State to elect which acts it was relying on to seek a conviction. The court denied appellant's request. As noted, the jury found appellant guilty of two of the counts and not guilty of two.

We agree with appellant that, by the State's evidence, the jury was told of multiple instances of conduct by appellant conforming to the allegations of the two counts of which

4

he was found guilty.[4]  The State concedes the trial court committed error by failing to require an election in that circumstance, and we agree.  But the State contends the error was harmless, and we agree with that contention as well.

We analyze the harm resulting from failure to require an election by considering its consequences with regard to the four purposes Texas courts have identified for the election rule: (1) to protect the accused from the introduction of extraneous offenses; (2) to minimize the risk that the jury might choose to convict, not because one or more crimes were proved beyond a reasonable doubt, but because all of them together convinced the jury the defendant was guilty; (3) to ensure unanimous verdicts, that is, all of the jurors agreeing that one specific incident, which constituted the offense charged in the indictment, occurred; and (4) to give the defendant notice of the particular offense the State intends to rely on for prosecution and afford the defendant an opportunity to defend.  *See Dixon v. State*, 201 S.W.3d 731, 734 (Tex.Crim.App. 2006) (so analyzing harm); *Phillips v. State,* 130 S.W.3d 343, 349 (Tex.App.–Houston [14th Dist.] 2004), *aff'd* 193 S.W.3d 904 (Tex.Crim.App. 2006) (describing purposes). Appellant focuses his argument on two of the four purposes of the rule, proper notice and jury unanimity.  Our analysis is conducted under the standard for constitutional error, requiring reversal unless we find beyond a

---

[4] Those counts contained on-or-about dates of March 1 and February 1, 2006, but the evidence provided no basis for a distinction between incidents allegedly occurring on those dates and those occurring on the dates contained in the counts for which appellant was found not guilty.

reasonable doubt that the error did not contribute to the conviction or punishment.[5] Tex. R. App. P. 44.2(a); *Dixon*, 201 S.W.3d at 734, *citing Phillips,* 193 S.W.3d at 914.[6]

In *Dixon*, the Court of Criminal Appeals conducted a harm analysis in a case involving sexual assault of a child about the same age as the victim here. *Dixon,* 201 S.W.3d at 731. The victim in *Dixon* described how the defendant assaulted her, relating a sequence of events that occurred, according to her testimony, "one hundred times." The only distinction among the occurrences to which the child testified was that one incident occurred during the day, but all others were at night. *Id.* at 731. Similarly, the boy here testified to the place and manner in which appellant fondled him. The boy said appellant "gently squeezed" his "pee-pee" while they were in the front seat of appellant's "SUV." Asked how many times such incidents occurred, he once said two times, later said three times and elsewhere indicated as many as five or six times. He said the incidents happened on "different days."

In *Dixon*, en route to its conclusion, beyond a reasonable doubt, that the trial court's error in failing to require an election did not contribute to the defendant's conviction or

---

[5] We note also that appellant was sentenced to confinement for a period of eight years on each of the four counts for which he was convicted. However, his sentences were ordered to run concurrently.

[6] If the State fails to elect but the evidence presented clearly indicates which specific incident the State is relying on, the error is not harmful. *Phillips,* 130 S.W.3d at 352. Thus if we are incorrect with regard to count I of the indictment, and the trial court's error extends to the failure to require the State to elect which incident it relied upon to prove guilt on count I, that error also was harmless because, as noted, the State's evidence clearly indicated the incident at the clinic restroom on March 14 was the specific incident on which it was relying.

punishment, the court rejected contentions that the defendant was deprived of adequate notice, 201 S.W.3d at 736, and that there was a risk of a non-unanimous verdict. *Id*. at 735. Given the similarities between the evidence presented in *Dixon* and the State's evidence supporting counts III and IV here, we find the Court of Criminal Appeals's analysis of harm in that case applicable here. If the jury believed the boy's testimony that appellant fondled him while they rode in his vehicle, its decision on appellant's guilt did not turn on which incident occurred on or about which date, but turned on how many incidents of fondling it determined had occurred. *See Young v. State*, No. 14-08-00629-CR, 2009 WL1660698 (Tex.App.–Houston [14th Dist.] June 16, 2009, no pet.) (mem. op., not designated for publication); *Jackson v. State,* Nos. 10-07-00129-CR, 10-07-00130-CR, 10-07-00131-CR, 10-07-00132-CR, 10-07-00133-CR, 10-07-00134-CR, 2008 WL 4149940 (Tex.App.–Waco Sept. 3, 2008, pet. ref'd) (mem. op., not designated for publication); *Ramon v. State*, No. 11-07-00062-CR, 2008 WL 2612569 (Tex.App.–Eastland July 3, 2008, pet. ref'd) (mem. op., not designated for publication) (all also applying *Dixon* analysis in comparable cases). And, as the State points out, the jury's acquittal of appellant on two of the four counts supports the conclusion the absence of an election was harmless. Appellant's first two issues are overruled.

Hearing Regarding Proper Outcry Witness

In appellant's third issue, he contends the trial court erred by refusing to hold a hearing required by article 38.072 of the Code of Criminal Procedure. Tex. Code Crim. Proc. Ann. art. 38.072 (Vernon Supp. 2004-05). Prior to trial, the State filed notice of its

intent to introduce outcry statements pursuant to article 38.072 through two witnesses, the boy's father and a police officer. Article 38.072 provides that outcry testimony from the first adult, other than the defendant, to whom a child witness made statements describing an alleged offense against the child will not be inadmissible because of the hearsay rule if the article's requisites are met.[7]

The law is clear that the requirements of article 38.072 are mandatory and must be followed for the outcry statement to be admissible over a hearsay objection. *Long v. State,* 800 S.W.2d 545, 547 (Tex.Crim.App. 1990); *Duncan v. State,* 95 S.W.3d 669, 671 (Tex.App.–Houston [1st Dist.] 2002, pet. ref'd). At trial, appellant apprised the trial court of his request for a hearing by requesting a hearing pursuant to article 38.072, bench filing his objection pursuant to Rule 802 of the Texas Rules of Evidence and a motion for hearing pursuant to article 38.072 and obtaining a running objection concerning these issues. *Lankston v. State,* 827 S.W.2d 907, 911 (Tex.Crim.App. 1992). Thus, as the State concedes, the trial court abused its discretion by admitting testimony to the boy's outcry without first conducting a hearing to identify the outcry witness and to make the required

---

[7] The statement is admissible if: (1) on or before the 14th day before the date the proceeding begins, the party intending to offer the statement notifies the adverse party of its intention to do so, provides the adverse party with the name of the witness through whom it intends to offer the statement, and provides the adverse party with a written summary of the statement; (2) the trial court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement; and (3) the child testifies or is available to testify at the proceeding in court or in any other manner provided by law. *See* Tex. Code Crim. Proc. Ann. art. 38.072(2)(b) (Vernon 2004-05).

finding concerning the reliability of the statement. *Duncan,* 95 S.W.3d at 671; *Bottenfield v. State,* 77 S.W.3d 349, 359 (Tex.App.–Fort Worth 2002, pet. ref'd).

To assess the harm resulting from the trial court's error, we apply the standard applicable to non-constitutional error. Tex. R. App. P. 44.2(b); *Bottenfield,* 77 S.W.3d at 359-60. Non-constitutional error must be disregarded unless it affects substantial rights of the defendant. *Johnson v. State,* 43 S.W.3d 1, 4 (Tex.Crim.App. 2001). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App. 1997); *Hankton v. State,* 23 S.W.3d 540, 548 (Tex.App.–Houston [1st Dist.] 2000, pet. ref'd). A conviction should not be overturned for such error if, after examining the record as a whole, we have fair assurance the error did not influence the jury, or had but a slight effect. *Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App. 1998). Likewise, improper admission of evidence is not reversible error if the same or similar evidence is admitted without objection at another point in the trial. *Leday v. State,* 983 S.W.2d 713, 718 (Tex.Crim.App. 1998); *Moore v. State,* 233 S.W.3d 32, 36 (Tex.App.–Houston [1st Dist.] 2007, no pet). *See also Duncan,* 95 S.W.3d at 672 (improper admission of outcry testimony was harmless error because similar testimony was admitted through complainant, pediatrician, and medical records).

The State's article 38.072 notice stated the following summary of the boy's father's anticipated outcry testimony:

On or about March 20, 2006, the victim, disclosed numerous incidents of sexual abuse, including multiple acts of Indecency with a Child. On or about March 20, 2006, the victim told [his father] that the defendant, Royce Jiminez, had exposed his penis to the victim, caused the victim to touch the defendant's penis, caused the victim to expose his penis to the defendant, and the defendant touched the victim's penis. Additionally, the victim stated that the defendant had touched the victim's penis on numerous occasions.

The notice gave the following summary of the testimony of the interviewing police officer:

On or about March 24, 2006, the victim, disclosed numerous incidents of sexual abuse, including acts of Indecency with a Child. On or about March 20, 2006, the victim told him that the defendant, Royce Jiminez, had exposed his penis to the victim, caused the victim to touch defendant's penis, caused the victim to expose his penis to the defendant, and the defendant touched the victim's penis. The victim also stated that the defendant would "squeeze" the victim's penis and stated the defendant wanted to see if the victim's penis "got hard." Victim also stated defendant would tell victim "not to tell" and/or that the sexual abuse was a secret. Additionally, the victim stated that the defendant had touched the victim's penis on five different occasions.

As noted, the boy testified without objection at trial both to the incident in the clinic restroom, when he said appellant touched his penis and had the boy touch appellant's penis, and to appellant's fondlings of his penis in appellant's vehicle. The trial testimony presented by the boy's father and the police officer was consistent with the summaries provided in the State's notice, and related the boy's reports of the same events to which the boy testified.

Because the outcry witnesses' testimony included the same facts that were admitted into evidence without objection, we must conclude the trial court's error in admitting the outcry testimony without the required hearing did not affect appellant's substantial rights,

10

and thus was harmless. Tex. R. App. P. 44.2(b); *Thomas v. State,* 1 S.W.3d 138, 142 (Tex.App.–Texarkana 1999, pet. ref'd) (error in admission of improper outcry witness was harmless when other proper evidence of such statements was admitted); *Duncan,* 95 S.W.3d at 672.

We overrule appellant's third issue.

Admission of Interview Video

In appellant's fourth issue, he complains of the trial court's admission, over his hearsay objection, of the video interview of the boy, conducted by a forensic interviewer. The State argues that appellant painted the boy as a liar and the video thus was admissible as a prior consistent statement. The State also contends that because the same evidence came in elsewhere without objection, any error was cured.

We first address the State's argument that the video was admissible as a prior consistent statement under Rule 801(e)(1)(B). *See* Tex. R. Evid. 801(e)(1)(B). The Texas Court of Criminal appeals has recognized four requirements that must be met for prior consistent statements to be admissible. *Hammons v. State*, 239 S.W.3d 798, 804 (Tex.Crim.App. 2007). The State has not satisfied the fourth requirement that "the prior consistent statement must be made prior to the time that the supposed motive to falsify arose." *Id.* Appellant's theory of the case at trial was that the boy's motive to lie arose when his father began to question him about a statement he had made in front of appellant. Appellant asserted the boy lied to his father during that conversation, then

repeated the lies to the forensic interviewer and in court.[8]  *See, e.g., Torris v. State,* No. 05-07-00829-CR, 2008 WL 3307093 (Tex.App.–Dallas July 31, 2008, pet. struck) (videotaped statement was made well before witness met with prosecutors when the supposed alteration in testimony was to have occurred, making the statement admissible as a prior consistent statement).  The videotaped statement was made after this discussion took place, thereby running afoul of the fourth requirement and making the statement inadmissible under Rule 801(e)(1)(B).  *See Martinez v. State,* 276 S.W.3d 75, 82-83 (Tex.App.–San Antonio 2008, pet. ref'd) (recorded statement not admissible under Rule 801(e)(1)(B) to refute suggestion victim falsely accused defendant because victim's alleged motive to lie arose before CPS statement was recorded); *citing Harughton v. State,* 805 S.W.2d 405, 407-08 (Tex.Crim.App. 1990) (finding video statement not admissible as prior consistent statement because alleged motive for fabrication arose prior to video statement).  *See also Dowthitt v. State,* 931 S.W.2d 244, 264 (Tex.Crim.App. 1996).  We find the trial court erred in admitting the videotape.

However, the error does not require reversal for the same reason the admission of the outcry witness testimony did not.  In situations where an improperly admitted videotape "essentially repeated the testimony" of the victim, when the victim also testifies and the videotape is cumulative of the victim's properly admitted testimony on the same issue, courts often disregard the error reasoning that it could not have affected the appellant's

---

[8] The State does not identify any other occasion from which the boy's supposed motive to lie would have risen.

12

substantial rights.[9] *Dunn,* 125 S.W.3d at 615, *citing Jensen v. State,* 66 S.W.3d 528, 537 (Tex.App.–Houston [14th Dist.] 2002, pet. ref'd); *Matz v. State,* 21 S.W.3d 911, 912 (Tex.App.–Fort Worth 2000, pet. ref'd) (op. on remand). That is the case here. We find that, because the testimony of the boy at trial "essentially repeated" the statement contained in the videotaped interview, the erroneous admission of the tape does not affect the substantial rights of appellant. *See* Tex. R. App. P. 44.2(b). We overrule appellant's fourth issue.

Confrontation through Cross-Examination

In appellant's last issue, he contends the trial court erred by disallowing him from questioning the boy's father about his disciplinary practices before the jury. He argues the practices provided an additional motivation for the boy to lie to his father during their initial conversation, and he was deprived of the opportunity to cross-examine the father about the motive.

The evidence showed that appellant and the boy's father had a conversation in which appellant related his version of the events in the clinic restroom, indicating the boy made a comment about appellant's penis. Appellant also told the boy's father that the boy recently had made a comment about the penis of a horse they saw while driving in appellant's

---

[9] However, some courts focus on the length of the improperly admitted testimony. *Dunn,* 125 S.W.3d at 615, *citing Moore v. State,* 82 S.W.3d 399, 406 (Tex.App.–Austin 2002, pet. ref'd). In *Dunn,* the court included in their analysis a comparison of the length of time it took the jury to hear the improperly admitted evidence with the properly admitted evidence. Here, in comparison with the live testimony presented at trial, the video is quite brief.

13

vehicle.[10] The boy's father decided to talk with his son about those events, and took him into the study of their home and closed the door. During their conversation, the boy made the outcry statement against appellant. The father further testified he "can be a hard dad," and that going into the study and closing the door would have indicated to his son that their conversation would be serious. Asked if that setting typically indicated the discussion would be serious, the father said, "Yeah, it's a serious talk . . . . It has to do with his behavior, with his mom, or school grades."

As noted, appellant's theory of the case at trial was that the boy lied to his father during that conversation, then repeated the lies to the forensic interviewer and in court. To pursue that theory, appellant took the boy's father on voir dire examination outside the presence of the jury. Asked how he disciplined his son, the father said he "put him in time out." He also said at times he took his son to a public field for what he called "boot camp," which he defined as "[g]oing out to a field and doing agilities, bear crawls, things like that." He also had the boy do exercises he called "up-downs," where the boy would run five yards, drop to the ground and do five push-ups, get up and run again. Asked how his son reacted to the boot camp activities, the father said, "He does it. He . . . does the bear crawls or the up and downs, and he responds and his behavior is corrected."

---

[10] Appellant testified the boy and his female cousins accompanied appellant to feed appellant's horses. While there, the boy saw a horse and said "Wow, girls, did you see that horse's penis?" Appellant testified that the comment "kind of startled" him and he "kind of snapped" at the boy and told him "you don't talk like that around girls" and told the boy he would talk to the boy's father about the comment. The boy admitted to his father that he made a comment along these lines.

Following this offer of proof, the State objected pursuant to Rules 608(b), 401 and 403. *See* Tex. R. Evid. 608(b), 401, 403. The State argued that the questions elicited specific instances of physical discipline of the boy. The State further argued the evidence was not relevant, and that it was more prejudicial than probative because the defense was trying to insinuate the boy's father was a bad parent or utilized bad parenting skills. The trial court sustained the objections, the action of which appellant complains in his fifth issue.

We review a trial court's decision to exclude evidence under an abuse of discretion standard. *Mozon v. State,* 991 S.W.2d 841, 846-47 (Tex.Crim.App. 1999); *Montgomery v. State,* 810 S.W.2d 372, 379-80 (Tex.Crim.App. 1991) (op. on reh'g). An abuse of discretion occurs when a trial court's decision is so clearly wrong that it lies outside the "zone of reasonable disagreement." *Gonzales v. State,* 117 S.W.3d 831, 839 (Tex.Crim.App. 2003). We first note our agreement with appellant that the right to confrontation by cross-examination is a fundamental constitutional right. *Thomas v. State,* 897 S.W.2d 539, 542 (Tex.App.–Fort Worth 1995, no pet.), *citing Shelby v. State,* 819 S.W.2d 544 (Tex.Crim.App. 1991). The exposure of a witness's motivation to testify is a proper and important function of cross-examination. *Thomas,* 897 S.W.2d at 542*, citing Olden v. Kentucky,* 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed. 513 (1988). We further agree that while extrinsic evidence of specific acts of conduct is generally not admissible to attack a witness's response, an exception exists where evidence shows bias or motive for the witness to testify untruthfully. *Thomas,* 897 S.W.2d at 542, *citing Murdock v. State,* 840 S.W.2d 558 (Tex.App.–Texarkana 1992), *rev'd on other grounds,* 856 S.W.2d 262.

But the trial court also maintains broad discretion to impose reasonable limits on cross-examination. *Lagrone v. State,* 942 S.W.2d 602, 613 (Tex.Crim.App. 1997). The trial court must carefully consider the probative value of the evidence and weigh it against the risks of admission, *inter alia*, harassment, undue prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence. *Lagrone,* 942 S.W.2d at 613; *Hodge v. State,* 631 S.W.2d 754, 758 (Tex.Crim.App. 1982). A trial court must weigh each Confrontation Clause issue on a case-by-case basis, so that both the defendant's right to cross-examine and the risk factors associated with the admission of the evidence are carefully taken into account. *Hoyos v. State*, 951 S.W.2d 503, 510 (Tex.App.– Houston [14th Dist.] 1997), *aff'd,* 982 S.W.2d 419 (Tex.Crim.App.1998). *See also Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

Appellant cross-examined the boy's father on the serious setting of their outcry conversation, and on his own description of himself as a "hard dad." The record of cross examination contains the following exchange:

> Q: Okay. Now, [boy's father], you also mentioned that the study is where you settle issues; is that correct?
> A: That is correct.
> Q: And that you can be a hard dad; is that correct, as well?
> A: That is correct.
> Q: And that any time you took [the boy] into the study, it was going to be for serious matters, such as his behavior . . . . Is that fair to say, as well?
> A: Yes, sir.

The father's testimony provided ample basis for appellant to argue the boy had a motivation to lie to avoid discipline for his comments about the horse's penis and appellant's.

16

The father's testimony that his disciplinary methods involved time out and boot camp would have provided cumulative or collateral evidence at most, and we think the trial court also reasonably could have determined the testimony risked confusing the issues.

Appellant relies on *Thomas,* 897 S.W.2d at 542. However, the testimony appellant proferred had far less probative value than the evidence excluded in *Thomas*. There, the defendant admitted he and the complainant engaged in sexual intercourse but he claimed it was consensual. *Thomas,* 897 S.W.2d at 541. The trial court disallowed the defendant from cross examining the complainant about her jealous and violent boyfriend, and her fear of him. *Id*. at 541-42. The defendant successfully argued on appeal that the testimony was admissible, and that its exclusion was harmful, pointing out his sole defense was that the complainant fabricated the assault because she feared her boyfriend. *Id*. at 542.

We cannot find an abuse of discretion by the trial court in denying appellant's offer of proof and refusing to permit him to ask questions of the boy's father concerning the discipline of his child. We overrule appellant's fifth issue.

Finding no reversible error, we affirm the judgment of the trial court.


James T. Campbell
Justice

Do not publish.

17