John TUY PHAM, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–99–00631–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 28, 2000.

George Allen Goodling, Houston, for Appellant.

* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

Carol M. Cameron, John B. Holmes, Houston, for State.

Panel consists of Justices MIRABAL, ANDELL, and LEE DUGGAN, Jr.*

## OPINION

MIRABAL, Justice.

A jury found appellant, John Tuy Pham, guilty of murder and assessed punishment at confinement for life.[1] We reverse and remand.

In appellant's first point of error, he asserts the trial court erred in overruling his motion to suppress his oral confession because his parents were not notified about his arrest as required by Texas Family Code section 52.02(b).

## EVIDENCE AT MOTION TO SUPPRESS HEARING

On August 22, 1998, Dung Van Ha, complainant, was killed in a drive by shooting. Appellant, a 16–year–old high school junior, became a suspect in complainant's murder. One of the lead investigators in the case was Houston Police Officer T. Miller of the homicide division. On September 9, 1998, at the direction of Officer Miller, Houston Police Officers Hale and Parish went to Clear Brook High School to take appellant into custody in connection with the murder of complainant. Hale and Parish met with Sergeant J. Gillane, a Galveston County Sheriff's Department Officer assigned to Clear Brook High School, and he told them he would locate appellant and bring him to the officers so they could talk with him. Appellant had skipped his last class of the day and was not in his classroom. School let out at 2:30 p.m. Gillane saw appellant riding as a passenger in a car about to leave the school parking lot at about 2:35 p.m., and Gillane asked appellant to step out of the car so

1. Appellant was a juvenile who was certified to stand trial as an adult.

Gillane could speak with him. Gillane and appellant knew each other, and appellant cooperated fully. Gillane walked with appellant to where Officers Hale and Parish were waiting.

Officers Hale and Parish took appellant into custody and drove him to 49 San Jacinto St. where, at about 3:35 p.m., Magistrate Howard Dixon gave him his legal warnings pursuant to section 51.095 of the Texas Family Code. Magistrate Dixon had been designated as a magistrate for purposes of the Family Code to give required warnings to juveniles. Hale and Parish then took appellant to the downtown police station at 1200 Travis St.; Hale testified this was one of the designated juvenile processing offices in the city. Hale turned appellant over to Officer Miller, the lead investigator who had sent Hale and Parrish to the high school to arrest appellant. Neither Officer Hale nor Officer Parrish attempted to contact appellant's parents at any time.

Officer Miller listened to a tape recording of Judge Dixon giving appellant his legal warnings. Miller met with appellant. Miller did not attempt to contact appellant's parents. Around 4:38 p.m., appellant gave an oral statement in which he admitted that he fired a .45 caliber weapon at the car complainant was driving. Appellant was then turned over again to Officers Hale and Parrish. Again, neither Hale nor Parrish attempted to contact appellant's parents. They transported appellant to the juvenile processing office located at 8300 Mykawa Rd. so that he could be processed, fingerprinted, and photographed.

Officer Parham at the juvenile processing office contacted appellant's sister at home around 8:15 p.m., and the Harris County Juvenile Probation Department contacted appellant's father at approximately 9:50 p.m.

Appellant's mother testified that neither she nor appellant's father was contacted by anyone from the high school, or from the Houston Police department, regarding her son's arrest until almost 10 p.m. that night when she received a call from a juvenile officer. It was not until the following morning that she found out why appellant had been arrested. There was no testimony from any representative of the high school as to any attempt by the principal's office to contact appellant's parents.

## DISCUSSION

■ Provisions of the Texas Family Code control issues concerning juvenile confessions, although they are raised in a criminal forum. *Griffin v. State*, 765 S.W.2d 422, 427 (Tex.Crim.App.1989); *Smith v. State*, 881 S.W.2d 727, 731 (Tex. App.—Houston [1st Dist .] 1994, pet. ref'd). Therefore, when a juvenile is in custody, the requirements of the Texas Family Code must be strictly complied with. *See Le v. State*, 993 S.W.2d 650, 655 (Tex.Crim.App.1999); *Comer v. State*, 776 S.W.2d 191, 194 (Tex.Crim.App.1989).

Section 52.02(b) of the Texas Family Code states that "[a] **person taking a child into custody *shall promptly*** give notice of his action and a statement of the reason for taking the child into custody, to: (1) the child's parent, guardian, or custodian; and (2) the office or official designated by the juvenile court." TEX.FAM.CODE § 52.02(b) (Vernon Supp.2000) (emphasis added). Section 52.02(b) does not define the term "promptly."

■ When, as here, a defendant seeks to suppress evidence, the burden of proof is initially on the defendant. *See Russell v. State*, 717 S.W.2d 7, 9 (Tex.Crim.App. 1986); *Ashcraft v. State*, 934 S.W.2d 727, 735 (Tex.App.—Corpus Christi 1996, pet. ref'd). A defendant must produce evidence that defeats a presumption of proper police conduct, which then shifts the burden to the State. *See Russell*. 717 S.W.2d at 9; *Ashcraft*, 934 S.W.2d at 735. Therefore, once a juvenile defendant puts on evidence that section 52.02(b) of the Family Code was not complied with, the

burden shifts to the State to show that the juvenile's statement was taken in compliance with section 52.02(b). *In the Matter of C.R.*, 995 S.W.2d 778, 783 (Tex.App.—Austin 1999, pet. denied). Illegally obtained evidence is inadmissible against an accused. TEX.CRIM.P.CODE ANN. art. 38.23(a) (Vernon Supp.2000).[2]

■ We generally review a trial court's ruling on a motion to suppress for abuse of discretion. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App.1996); *Curry v. State*, 965 S.W.2d 32, 33 (Tex. App.—Houston [1st Dist.] 1998, no pet.). In reviewing the trial court's ruling, we apply a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App.2000); *Hernandez v. State*, 957 S.W.2d 851, 852 (Tex.Crim.App.1998) (applying standard of review from *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim. App.1997) to claim of involuntariness of oral and written statements). We give almost total deference to the trial court's determination of historical facts, while we conduct a de novo review of the trial court's application of the law to those facts. *Carmouche*, 10 S.W.3d at 327. The trial court is the exclusive finder of fact in a motion to suppress hearing, and, as such, it may choose to believe or disbelieve any or all of any witness's testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim. App.1990).

The trial court specifically found that appellant's parents were not notified about his arrest until after he had given the confession and had been transported to the Mykawa Road juvenile processing office.

2. The Texas Family Code expressly makes Chapter 38 of the Texas Code Criminal Procedure applicable to juvenile proceedings. *See* TEX.FAM.CODE § 51.17(c) (Vernon Supp.2000); *see also Le v. State*, 993 S.W.2d 650, 656 (Tex.Crim.App.1999).

3. The State argues in its brief that the evidence supports the conclusion that appellant's parents were notified, at the earliest, when appellant was taken into custody at 2:45 p.m., based on Sargeant Gillane's testimony that he notified the high school principal of appel-

In written findings of fact and conclusions of law, the trial court stated, in part:

### Findings of Fact

26. After Defendant was processed into the juvenile holding facility, Officer Parham contacted Defendant's sister regarding Defendant's whereabouts at approximately 8:15 p.m. At approximately 9:50 p.m. the same evening the juvenile probation department communicated with Defendant's father. Less than 6 hours elapsed from the time of Defendant's initial detention until a member of Defendant's family was notified of Defendant's arrest.

### Conclusions of Law

6. Defendant's family was promptly notified within the requirements of Texas Family Code Section 52.02(b).

■ The issue presented, therefore, is whether notice from the officer at the juvenile holding facility to appellant's sister, approximately six hours after his arrest, was "prompt" notice to appellant's parents, by the "person taking a child into custody" within the meaning of section 52.02(b).[3]

What is striking about this case is that the arresting officers, and their supervisor, Officer Miller, did not consider it their responsibility to notify appellant's parents about his arrest. Officer Miller testified as follows:

Q: [Prosecutor]: As far as during the time period you had the defendant in your custody there, did you at any time talk with any family mem-

lant's arrest about 2:45 p.m., and his explanation of school procedures. However, there is no evidence that the school actually notified, or even attempted to notify appellant's parents, and appellant's mother testified that no one from the school notified her. The trial judge found that there was no notice to appellant's family until 8:15 p.m., a finding that precludes our consideration of the State's argument that notice occurred earlier; the evidence supports the trial court's fact finding.

ber of the defendant as far as where the defendant was and what was going on with the case at that point?

A. [Officer Miller]: No, I didn't.

Q. Subsequent to that did other officers do that?

A. Yes, they did.

Q. And who was that?

A. Officer Parham in the juvenile division contacted the defendant's sister at 8:15. And the Harris County juvenile probation contacted the defendant's father at approximately 9:50.

. . . .

Q: [Defense Counsel]: And I think you testified that you did, not, and I may be wrong; but, you did not contact John Pham's parent, guardian or custodian once John Pham was taken into custody?

A: [Officer Miller]: I did not. It was done by Officer Parham in the juvenile division.

. . . .

Q. Okay. Well, when was John Pham taken into custody?

A. When he was picked up out at the school.

Q. And when did Officer Parham contact or when was Officer Parham alerted as to the arrest of John Pham and the necessity by Officer Parham to comply with Sec. 52.02 of the Family Code relative to release or delivery to the court?

A. Officer Parham contacted the defendant's sister at 8:15 p.m.

. . . .

Q. And did you talk to Officer Parham yourself?

A. Nope, I did not.

Q. Who did, if you know?

A. Who talked to Officer Parham?

Q. Correct.

A. From our division? I don't understand. I am sure that many people

talk to Officer Parham, but pertaining to what?

Q. Well, pertaining to this case who contacted Officer Parham for purpose of alerting him that a juvenile was in custody and that he needed to contact the child's parent, guardian or custodian, if you know?

A. I don't know.

Q. [A]s I understand your testimony the only time or the first time that a person with the juvenile authorities is contacted is when Officer Parham ... was contacted relative to John Pham at 8:00 o'clock or 8:15 or something along those lines.

A. Basically that would be correct. The defendant was arrested. He made a statement, a voluntary statement. He was transferred to the juvenile division who notified the defendant's family and also notified Harris County Juvenile Probation who then, I assume, although I don't know who did it, notified the juvenile courts and it happened within that chronological order generally speaking.

It is obvious from Officer Miller's testimony that he was under the impression the arresting officers had no duty to notify the child's parents upon the child's arrest. Officer Miller, one of the lead investigators in this murder case, apparently believed that the homicide division could hold the juvenile appellant as long as necessary to interrogate him without any notice to appellant's parents-that it was the responsibility of juvenile officers to notify appellant's parents after homicide was finished with the interrogation and after homicide had transported appellant to the Mykawa Road juvenile processing office across town. During the almost six hours that appellant was in the custody of the homicide division officers, no attempt whatsoever was made to contact his parents.

Section 52.02(b) of the Family Code was clearly violated. The duty to notify a

child's parents belonged to the "person taking a child into custody," i.e., Officers Hale and Parish, and their supervisor, Office Miller in this case. It was their responsibility to see to it that notice of appellant's arrest, with a statement of the reason for taking him into custody, was promptly given to appellant's parents and the official designated by the juvenile court. These officers were apparently oblivious to the fact they had such a duty, and they did not perform as required.

The Court of Criminal Appeals explained the rationale behind Title 3 of the Family Code, which includes chapter 52:

> In construing provisions of Title 3 of the Family Code we must be mindful of the sometimes competing purposes it is meant to serve, *viz:* to protect the public from the unlawful acts of children while concomitantly insulating these children from the stigma of criminality and providing for their welfare and edification—and 'to achieve the foregoing purposes in a family environment whenever possible, separating the child from his parents only when necessary for his welfare or in the interest of public safety. . . .'

*Comer,* 776 S.W.2d at 193 (quoting TEX. FAM.CODE § 51.01). Ten years later, the Court of Criminal Appeals stated in *Le:*

> Today we reaffirm our decision in *Comer.* . The Legislature has set forth very specific actions which a law enforcement officer must take when arresting a juvenile. We are aware of the disturbing increase in juvenile crime in our state, and we are sympathetic to law enforcement's efforts to deal with violent juvenile offenders. Nevertheless, we must not ignore the Legislature's mandatory provisions regarding the arrest of juveniles. We informed the citizenry, a decade ago in a unanimous opinion, of the Legislature's clear intent to reduce an officer's impact on a juvenile in custody.

> Today we remind police officers of the Family Code's strict requirements.

*Le,* 993 S.W.2d at 655.

In *Comer,* before reversing the case for failing to transport a juvenile "forthwith" to the custody of the juvenile custody facility, the Court of Criminal Appeals conducted a taint attenuation analysis, utilizing the four factors from *Bell v. State,* 724 S.W.2d 780 (Tex.Crim.App.1986). *Comer,* 776 S.W.2d at 196–97. Those factors are: (1) the giving of *Miranda* warnings; (2) the temporal proximity of the arrest and the confession; (3) the presence of intervening circumstances; and (4) the purpose and flagrancy of the official misconduct. *Bell,* 724 S.W.2d at 788. In the present case, *Miranda* warnings were given, as in *Comer* (*Comer,* 776 S.W.2d at 196); the confession came approximately two hours after the violation, as in *Comer* (*id.* at 193); an intervening circumstance is that appellant was taken before a neutral magistrate for warnings, as in *Comer* (*id.* at 193, 196); and the officers did not wilfully violate the law in order to obtain appellant's confession, as in *Comer* (*id.* at 197). The court in *Comer* concluded that the taint of the juvenile's unlawful detention had not dissipated by the time he gave his confession, noting that:

> We cannot say with any degree of confidence that, had appellant been transported 'forthwith' to the custody of the juvenile detention facility, where he may have had access to, if not counsel, at least his parents . . . he would still have chosen to confess his crime.

*Comer,* 776 S.W.2d at 197.

■ Family Code section 52.025(c) specifically provides: "A child may not be left unattended in a juvenile processing office and is entitled to be accompanied by the child's parent, guardian, or other custodian or by the child's attorney." TEX.FAM.CODE § 52.025(c) (Vernon Supp.2000). If the arresting officers had promptly notified appellant's parents of his arrest approximately two hours before his confession, there would have been time for them to get to the juvenile processing office at 1200 Tra-

vis before the confession.[4] As in *Comer*, we cannot say with any degree of confidence that if appellant had access to his parents or his attorney, he would still have chosen to confess to the crime. Accordingly, appellant's statement should have been suppressed under article 38.23 of the Texas Code of Criminal Procedure. *See also In the Matter of C.R.*, 995 S.W.2d at 782 (holding juvenile's confession inadmissible because of violation of Family Code Section 52.02(b)).

## HARM ANALYSIS

 Because we find the trial court erred in overruling appellant's motion to suppress, we must now consider whether appellant was harmed by the admission of his oral confession. We apply Texas Rule of Appellate Procedure 44.2(b) to determine whether the trial court's error constitutes reversible error. *See* Tex. R.App.P. 44.2(b). Non-constitutional error must be disregarded unless it affects substantial rights of the defendant. *Id.* A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim.App.1997). A conviction should not be overturned for such error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998).

In the present case, appellant did not testify at the trial. Tien Ha, complainant's brother and a passenger in the car in which complainant was shot and killed, is the only witness who was able to identify a shooter. Ha identified another man, Tien Tran, as the individual he saw shooting a gun. Ha also testified that Tien Tran was in a white Honda Accord. The other witnesses testified they could not identify any person in the white Honda because either the car's windows were tinted or the witness had ducked down to avoid being hit by the gunfire. The murder weapon was not introduced at trial, and no one testified that appellant was the shooter.

The evidence, excluding appellant's confession, does not implicate appellant as being someone who shot a gun at the car complainant was driving. We cannot ignore the substantial, dramatic effect the confession must have had on the decision-making process of the jury. Accordingly, we hold that the denial of appellant's motion to suppress constituted reversible error. We sustain appellant's first point of error.

## CONCLUSION

Because we have sustained appellant's first point of error, it is not necessary to reach the merits of appellant's remaining points of error, and we decline to do so. We reverse the judgment and remand the cause to the trial court for further proceedings.

---

4. The trial court specifically found that "[t]he entire building at 1200 Travis, including the interview room where Miller and Defendant talked, is designated as a juvenile processing office."