Opinion issued November 26, 2003












In The
Court of Appeals
For The
First District of Texas




NO. 01-99-00631-CR




JOHN TUY PHAM, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 177th District Court
Harris County, Texas
Trial Court Cause No. 795648




EN BANC OPINION ON REMAND FROM 
THE COURT OF CRIMINAL APPEALS
          A jury found appellant, John Tuy Pham, guilty of murder and assessed
punishment at life in prison. This Court reversed the conviction because the trial
court had erred in admitting appellant’s confession. Pham v. State, 36 S.W.3d 199
(Tex. App.—Houston [1st Dist.] 2001) (Pham I). On petition for discretionary
review, the Court of Criminal Appeals vacated our judgment and remanded the cause
for reconsideration in light of Gonzales v. State, 67 S.W.3d 910 (Tex. Crim. App.
2002). Pham v. State, 72 S.W.3d 346 (Tex. Crim. App. 2002) (Pham II). We apply
Gonzales by considering whether there was a causal connection between (1) the
failure to notify appellant’s parents of his custody and whereabouts and (2) the
acquisition of appellant’s confession. We also address (1) whether appellant
preserved his complaint that the trial court should have suppressed his oral statement
because he was not taken to a juvenile processing office without unnecessary delay;
(2) whether the trial court reversibly erred in refusing appellant’s requested jury
instructions regarding the admissibility of appellant’s illegally taken oral confession;
and (3) whether the trial court abused its discretion in excluding expert testimony
regarding the impact or desirability of probation versus incarceration. We affirm.
Facts
          Appellant was a 16-year-old high school junior when he became a suspect in
a drive-by shooting that had resulted in the death of the complainant, Dung Van Ha. 
Houston Police Department officers went to appellant’s school and took him into
custody about 2:35 p.m. The officers were told by a school security guard that the
principal would contact appellant’s family and that the guard himself would contact
appellant’s brother. The officers took appellant to be warned by a magistrate about
3:35 p.m. Appellant was then taken to the downtown police station and questioned
by an investigator. About 4:38 p.m., appellant admitted having fired a .45-caliber
weapon at the car that the complainant was driving. The officers who had taken
appellant into custody then took appellant to a juvenile facility be processed,
fingerprinted, and photographed.
          The first notification of appellant’s family was made by an officer at the
juvenile processing facility. The officer spoke to appellant’s sister around 8:15 p.m. 
Someone from the Juvenile Probation Department contacted appellant’s father about
9:50 p.m. It was not until the following day that appellant’s parents went to see
appellant and found out why he had been taken into custody.
Requirement of Causal Connection Between
Failure to Notify Parents and Child’s Ensuing Confession

          In his first and second points of error, appellant contends that his confession
should have been suppressed pursuant to article 38.23 of the Code of Criminal
Procedure (the Texas statutory exclusionary rule) because the police did not comply
with section 52.02(b) of the Family Code. See Tex. Code Crim. Proc. Ann. art.
38.23(a) (Vernon Supp. 2004); Tex. Fam. Code Ann. § 52.02(b) (Vernon Supp.
2004). Section 52.02(b) requires that a person taking a child into custody promptly
give notice of the person’s action, and a statement of the reason for taking the child
into custody, to the child’s parent, guardian, or custodian and to the office or official
designated by the juvenile board. Tex. Fam. Code Ann. § 52.02(b). Appellant’s
complaint focuses on the failure to notify his parents promptly.
          In Pham I, we held that the officers failed to notify appellant’s parents
promptly. Id., 36 S.W.3 at 203-04. A juvenile’s written statement obtained after a
violation of section 52.02(b) of the Family Code is not automatically inadmissible,
however. See Gonzales, 67 S.W.3d at 912-13. If evidence obtained in violation of
the Family Code is to be excluded, article 38.23 of the Code of Criminal Procedure
is the proper mechanism for exclusion. Id. Article 38.23(a) provides that “[n]o
evidence obtained by an officer or other person in violation of any provisions of the
Constitution or laws of the State of Texas . . . shall be admitted in evidence . . . .” 
Tex. Code Crim. Proc. Ann. art. 38.23(a). Evidence is not obtained in violation of
a provision of law if there is no causal connection between the illegal conduct and the
acquisition of evidence. Gonzales, 67 S.W.3d at 912. Therefore, in light of article
38.23(a), before a juvenile’s written statement can be excluded, there must be a causal
connection between the violation of section 52.02(b) and the making of the statement. 
See id.
 
          In our original opinion, we conducted a taint-attenuation analysis, tracking
Comer v. State, 776 S.W.2d 191 (Tex. Crim. App. 1989). See Pham I, 36 S.W.3d at
204-05. This was apparently an insufficient analysis to avoid a remand for
reconsideration in light of Gonzales. Therefore, at the outset, we determine whether
causal connection and attenuation of the taint constitute separate analyses.
A.      Whether Causal Connection and Attenuation of the Taint Involve
Separate Analyses

          The case most clearly demonstrating separate analyses for causal connection
and attenuation of the taint, and the order in which they are to be undertaken, is
Roquemore v. State, 60 S.W.3d 862 (Tex. Crim. App. 2001). In Roquemore, the
Court of Criminal Appeals first found a causal connection between the recovery of
the stolen property and the illegality of the police conduct. Id. at 871. The Court
found it unnecessary, however, to proceed to an attenuation-of-the-taint analysis
because the State did not raise the argument. Id. at n.14.
          Based on Roquemore, and based on the fact that our attenuation-of-the-taint
analysis in Pham I was found inadequate to satisfy a Gonzales causal-connection
analysis, we conclude that there are separate analyses for causal connection and
attenuation of the taint. Based on Roquemore, we also conclude that the causal-connection analysis precedes the attenuation-of-the-taint analysis. We next determine
who has the burden in a causal-connection analysis.
B.      Who Has the Burden
          1.       Causal connection
          No direct authority establishes who has the burden of proving a causal
connection between a Family Code violation and a juvenile defendant’s statement. 
The Court of Criminal Appeals has directed us to conduct a causal-connection
analysis, but has not set out whether the State or the defendant has the burden of
proof. Not surprisingly, both parties have argued that the other party should have the
burden.
          Appellant argues that the burden of disproving a causal connection lies with
the State. Appellant relies on (1) an analogy to how the burden shifts to the State to
show compliance with a statute once the accused has raised some evidence of a
violation; (2) an analogy to the State’s ultimate burden of proving that the
voluntariness of a confession; and (3) a commentator’s observation that Gonzales
recognized with approval a statement from Comer that appeared to conclude that the
evidence failed to show the lack of a causal connection between the statutory
violation and the making of the statement. We agree with appellant that, once a
defendant raises some evidence of a Family Code violation, the State then has the
burden of proving compliance with the statute. Roquemore, 60 S.W.3d at 869. This
does not resolve the issue of who has the burden of proving a causal connection
between the violation of the statute and the ensuing statement, however. We also
agree with appellant that the State has the ultimate burden of proving that a statement
is admissible under an attenuation-of-the-taint analysis, just as the State has the
ultimate burden of proving a confession is voluntary, but the issue before us is who
has the initial burden regarding a causal connection, not who has the ultimate burden
of persuasion. Finally, the practice commentary cited by appellant does not address
the issue of who has the initial burden regarding causal connection.
          The State argues that placing the burden on appellant to demonstrate a causal
connection is proper because (1) inadmissibility is not established by violation of a
statute alone, but only upon a showing of a causal connection between the violation
and the ensuing confession and (2) it is well settled that the failure to take an arrestee
before a magistrate promptly will not invalidate a confession unless there is proof of
a causal connection between the delay and the confession. The State cites Cantu v.
State for the latter proposition. See id., 842 S.W.2d 667 (Tex. Crim. App. 1992). In
Cantu, the Court of Criminal Appeals looked to the appellant to demonstrate a
connection between the violation of the statute and the confession. Id. at 680.
          We agree with the State that it is appropriate to look to analogous
circumstances involving a violation of a statute after which evidence, primarily a
confession, is obtained. There are many cases holding that, absent a showing of a
causal connection between the failure to take an accused before a magistrate
promptly, as required by statute, and the accused’s ensuing confession, the validity
of the confession is not affected. See, e.g., Boyd v. State, 811 S.W.2d 105, 124 (Tex.
Crim. App. 1991). The appellant is generally expected to make the showing. Id. at
125 (“Appellant fails to demonstrate any causal connection between his statement and
the failure of the authorities to take him before a magistrate.”); Schultz v. State, 510
S.W.2d 940, 943 (Tex. Crim. App. 1974) (“[A]ppellant must show a causal
connection between [the failure to take appellant before a magistrate] and his
confession.”); Shadrick v. State, 491 S.W.2d 681, 684 (Tex. Crim. App. 1973) (same). 
This Court has also held that it is a defendant’s burden to show a causal connection
between the failure to take him before a magistrate and a subsequent confession in
order to obtain suppression of the confession. See Bonner v. State, 804 S.W.2d 580,
582 (Tex. App.—Houston [1st Dist.] 1991, pet. ref’d); Straughter v. State, 801
S.W.2d 607, 610 (Tex. App.—Houston [1st Dist.] 1990, no pet.). In another
analogous situation, this Court has placed the burden on the defendant to show a
causal connection between an improper warning and a decision to submit to a breath
test. See Schafer v. State, 95 S.W.3d 452, 455 (Tex. App.—Houston [1st Dist.] 2002,
pet. ref’d).
          We see no reason to apply a different burden regarding the causal-connection
analysis between violations of the Family Code requirement to notify a juvenile’s
parents and a subsequent statement. This is particularly appropriate where the Court
of Criminal Appeals has held that evidence is not obtained in violation of the law if
there is no causal connection between the illegal conduct and the acquisition of the
evidence. See Gonzales, 67 S.W.3d at 912.
          Moreover, as a practical matter, it is reasonable to place the burden on the
defendant to produce evidence to which only the defendant has access. The
defendant alone has access to his own thought processes, and the defendant has much
better access to his own parents, who are likely to be much more cooperative with
their accused child and his attorney than with the State. See, e.g., State v. Simpson,
105 S.W.3d 238, 242-43 (Tex. App.—Tyler 2003, no pet. h.) (relying on testimony
of juvenile defendant’s mother that she and her husband waited to take action
concerning the defendant, having confidence that police would contact them if the
child had been taken into custody). On the other hand, it is more reasonable to place
the burden on the State to show attenuation of the taint because the State has control
of the detention and interrogation process so that it may engage in conduct that
dissipates and neutralizes the taint from any unlawful police conduct.
 
          Accordingly, we conclude that the burden is on the juvenile defendant to show
some evidence of a causal connection between the failure to notify the juvenile
detainee’s parents and an ensuing confession.
          2.       Attenuation of the taint
          As pointed out above, the Roquemore court looked to the State to establish
attenuation of the taint. Id., 60 S.W.3d at 871 n.14. The parties do not even argue
about this proposition. We conclude that it is the State’s burden to demonstrate
attenuation of the taint, once a causal connection is shown between police illegality
and the recovery of evidence.
C.      Summary
          For the foregoing reasons, we hold that, when a juvenile defendant seeks to
suppress a confession given after the failure to notify the juvenile’s parents promptly
of the juvenile’s whereabouts and the reason for taking the juvenile into custody, the
burden is initially upon the defendant to raise the issue by producing evidence of a
violation of the statutory requirement. Roquemore, 60 S.W.3d at 869. The burden
then shifts to the State to prove compliance with the statute. Id. Because a violation
of the statute is not alone sufficient to require exclusion of the confession, the burden
then reverts to the defendant to produce evidence of a causal connection between the
statutory violation and the ensuing confession. Cf. Cantu, 842 S.W.2d at 680. Once
the defendant meets this burden, the State must then shoulder the burden of either
disproving a causal connection or demonstrating attenuation of the taint. See George
E. Dix & Robert O. Dawson, 41 Texas Criminal Practice & Procedure §
13.339, at 29 (2d ed. Supp. 2003) (“Most likely, however, a defendant challenging
evidence must show a causal connection between the section 52.02 illegality and the
obtaining of the evidence. If this is shown, the State may raise and undertake to
establish that the taint of the illegality was attenuated by the time the challenged
evidence was obtained.”). Because we addressed the violation of the statute in our
original opinion, holding that the statute requiring parental notification was violated,
it is unnecessary to repeat that analysis in this opinion. We thus proceed directly to
a causal-connection analysis. 
D.      Causal-Connection Analysis
          Despite arguing that it was the State’s burden to negate a causal connection,
appellant maintains that the causal link was clear and obvious in this case. First,
appellant anticipates that the State will argue that the short length of time that
appellant was detained before giving the confession negates any causal link. 
Appellant urges us to reject what he characterizes as a facially-appealing argument
because it would reward police officers for quickly obtaining confessions in disregard
of statutory requirements. Appellant argues that a causal connection was shown by
the limitless, potentially different outcomes that might have resulted if appellant’s
parents had been promptly notified. Appellant argues that (1) his parents might have
arranged counsel for him; (2) they might have intervened with the investigators; (3)
they might have arranged for appellant to be interviewed in a less coercive setting;
(4) they might have advised appellant not to make any statement; or (5) any of a
multitude of possibilities might have transpired. The State argues that there is no
evidence of any causal connection, citing a recent case from the Fourteenth Court of
Appeals. See Vann v. State, 93 S.W.3d 182, 185-86 (Tex. App.—Houston [14th
Dist.] 2002, pet. ref’d) (finding no causal link between two-and-one-half hour delay
in notifying defendant’s cousin and making of defendant’s written statement, when
cousin was present at detention and arrest and at station during time that defendant
confessed).
          Regarding what effect the failure to notify appellant’s parents promptly had
upon his decision to confess, the record does not yield any evidence whatsoever. 
There is no evidence as to what appellant’s parents would have done if they had been
notified more promptly. There is no evidence that appellant was aware that his
parents were supposed to be notified or that he was aware that they were not more
promptly notified. There is no evidence that appellant asked to speak with his
parents. To the contrary, there is evidence he did not ask for his parents “or anything
like that.” It is noteworthy that, upon being notified at 9:50 p.m., appellant’s parents
did not immediately attempt to contact appellant or an attorney. Instead, they waited
until the following day to visit appellant. There is also evidence that appellant did not
ask to speak to an attorney when given his rights, including his right to consult with
counsel.
          Because appellant had the burden of producing evidence of a causal
connection, and because appellant produced no evidence, but only speculation, of
what might have happened, we conclude that appellant has not met his burden. It is,
thus, unnecessary to conduct an attenuation-of-the-taint analysis.
          We overrule appellant’s first and second points of error.
Failure to Take Detained Juvenile Without Unnecessary Delay
 to an Office or Official Designated by the Juvenile Court

          In his third and fourth points of error, appellant contends that the trial court
reversibly erred in denying appellant’s motion to suppress his oral statement because
it was taken in violation of section 52.02(a) of the Texas Family Code. See Tex.
Fam. Code Ann. § 52.02(a) (Vernon Supp. 2004). Appellant argues that he was not
taken to a juvenile processing office as designated by section 52.025(a) of the Texas
Family Code and that he was not taken without unnecessary delay to an office or
official properly designated by the juvenile court, as required by section 52.02(a)(2)
of the Texas Family Code. See id. §§ 52.02(a)(2), 52.025(a) (Vernon 2002 & Supp.
2004). Specifically, appellant argues that, even if the entire police station at 1200
Travis is a designated facility, appellant was not taken to an office inside designated
exclusively for processing juveniles.
          The Texas Family Code requires that, without unnecessary delay, a detained
juvenile be released to his parents (etc.), brought before the office or official
designated by the juvenile court, brought to a juvenile detention facility, or brought
to a medical facility under certain conditions, but the Code provides an exception to
allow a detained juvenile first to be taken to a juvenile processing office. Id. §
52.02(a). A juvenile processing office is defined in section 52.025 of the Texas
Family Code as an office or room designated by the juvenile board for the temporary
detention of a juvenile in order to return the child to his parent or custodian (etc.), to
complete required paper work, to photograph and to fingerprint, to issue warnings,
or to receive a statement by the juvenile. Id. § 52.025(a), (b).
          Appellant acknowledges that there was conflicting testimony supporting the
trial court’s conclusion of law that appellant’s statement was taken in a designated
juvenile processing office. Appellant claims that this case is controlled by Baptist Vie
Le v. State, in which the juvenile defendant was taken to the same place that appellant
was taken and that place was held not to be a designated juvenile processing office. 
Id., 993 S.W.2d 650, 654-55 (Tex. Crim. App. 1999). In Baptist Vie Le, however,
there was nothing in the record to indicate that the homicide division of the Houston
Police Department was a designated juvenile processing office. Id. at 654.
          Nevertheless, appellant argues that, even if the homicide division was a
designated juvenile processing office, appellant was not taken to a particular room
designated only for processing juveniles. Appellant relies on Anthony v. State for the
proposition that, even though a police station is designated a facility for processing
juveniles, the police must use an area designated exclusively for juveniles in order to
protect the juvenile from the stigma of criminality or exposure to adult offenders. Id.,
954 S.W.2d 132, 135-36 (Tex. App.—San Antonio 1997, no pet.), overruled on other
grounds by Gonzales, 67 S.W.3d at 912-13, 912 n.6 (holding that violation of Family
Code does not automatically lead to exclusion of evidence). The State argues that
appellant did not present this specific complaint to the trial court so as to preserve
error on appeal. Appellant filed a written motion to suppress evidence. The motion
specified both article 38.23 of the Texas Code of Criminal Procedure and section
52.02(b) of the Texas Family Code, but it did not mention section 52.02(a) or section
52.025 of the Texas Family Code or complain about the failure to take appellant to
a designated juvenile processing office. During arguments presented in support of
his motion to suppress, after having presented evidence, appellant again did not
mention sections 52.02(a) or 52.025 or, in any way, allude to the failure of the police
to take appellant to a designated juvenile processing office, much less one that was
used exclusively for processing juveniles. Accordingly, we overrule appellant’s third
and fourth points of error because we conclude that he failed to preserve them by
objecting on those grounds below. See Tex. R. App. P. 33.1(a)(1)(A).
Refusing Jury Instruction to Disregard Illegally Taken Confession
          In his fifth point of error, appellant contends that the trial court reversibly erred
in refusing his requested jury instruction regarding the admissibility of his illegally
taken oral confession. Appellant appears to include both the rejection of his request
for a jury instruction pursuant to article 38.23 of the Code of Criminal Procedure
(Texas statutory exclusionary rule) and section 52.02(b) of the Texas Family Code
(failure to notify parents promptly). Appellant argues that he was entitled to the
instruction because the evidence, from both the State and the defense, showed that
appellant’s parents were not promptly notified.
          The State points out, as did the trial court below, that there was no controverted
evidence regarding the issue. It is well settled that a defendant is entitled to an
evidence-excluding instruction to the jury only when the evidence raises a factual
issue for the jury to resolve. Bell v. State, 938 S.W.2d 35, 48 (Tex. Crim. App. 1996). 
Accordingly, we overrule appellant’s fifth point of error.
Exclusion of Expert Testimony Regarding Probation Suitability
          In his sixth point of error, appellant contends that the trial court abused its
discretion in excluding the testimony of Dr. Beth Pelz regarding appellant. Appellant
argues that Dr. Pelz’s testimony that appellant would not have benefitted from long-term incarceration was admissible pursuant to rule 702 of the Texas Rules of
Evidence. See Tex. R. Evid. 702. Appellant claims that the testimony would have
assisted the jury in determining appellant’s sentence.
          When this case was tried, and even when the parties filed their briefs, this
Court had not yet decided Peters v. State, 31 S.W.3d 704 (Tex. App.—Houston [1st
Dist.] 2000, pet. ref’d). In Peters, we held that suitability for probation can be
relevant to the jury’s recommendation of punishment, provided that it is helpful to the
jury in determining the appropriate sentence. Id. at 719. We pointed out to the bench
and bar that important changes in article 37.07, section 3(a) of the Texas Code of
Criminal Procedure


 may make evidence admissible, despite much case law holding
similar evidence per se inadmissible under the prior and more restrictive version of
that statute. Id. at 722. We were speaking of the very case law upon which the State
is relying here.
 
          During the trial of this case, the State requested a hearing outside the presence
of the jury to determine the admissibility of Dr. Pelz’s testimony as an expert. 
Defense counsel first presented Dr. Pelz’s credentials, which included expertise in the
sociology of gangs. Initially, when the trial court asked if defense counsel was
presenting Dr. Pelz to give her opinion as to whether appellant should get probation,
defense counsel emphatically denied that she could give her opinion as to whether or
not appellant should get probation. After defense counsel presented some testimony,
and a couple of attempts at a proffer, the trial court expressed concern about what the
exact nature of Dr. Pelz’s testimony would be. Finally, defense counsel stated that
Dr. Pelz would give three expert opinions: (1) that, based on everthing Dr. Pelz knew,
appellant would be a good candidate for probation; (2) that incarceration in the
penitentiary for a person of appellant’s maturity, coupled with his gang affiliation,
would have a long-standing, detrimental impact on appellant, not serving society’s
purpose; and (3) that her observation of appellant showed him to be an immature
individual who had been impacted by gang-type activities and individuals in the gang. 
After further examination and cross-examination, the prosecutor stated that he had no
objection to Dr. Pelz’s testifying about the impact of gangs on a person of appellant’s
maturity.
 
          The trial court ruled that Dr. Pelz’s qualifications and professional background
were impressive, but in regard to Dr. Pelz’s stating her opinions about appellant’s
suitability for probation and the adverse effect of incarceration, the trial court found
that nothing had been presented to show that Dr. Pelz’s findings or opinions were
accepted as valid in the scientific community, that they were grounded on any
particularly reliable scientific procedure, or that they were reliable. The trial court
concluded that, given the speculative nature of Dr. Pelz’s opinions, they were entirely
too nebulous and speculative to assist the jury. The trial court ruled that Dr. Pelz’s
opinions as to the desirability of probation and the impact of incarceration would not
be admissible, but that her opinions as to appellant’s maturity and attraction to gangs
would be admissible.
          It is noteworthy that, although the State relied upon the old line of cases that
we held in Peters were supplanted by statutory changes, the trial court here
acknowledged appellant’s argument at trial that the State’s authority predated the new
rules of evidence relative to expert opinions. The trial court did not base its ruling
on the old line of cases, but, rather, upon an application of the rules of evidence
concerning expert opinions, their reliability, and their ability to assist the jury to
determine an issue in the case.
 
          Here, the trial court performed its duty to determine whether the expert
opinions in question would be helpful to the jury in determining the appropriate
sentence in this case.


 See Peters, 31 S.W.2d at 718 (quoting Mendiola v. State, 21
S.W.3d 282, 285 (Tex. Crim. App. 2000)). We hold that the trial court’s obviously
conscientious efforts in this case were well within the zone of reasonable
disagreement so as not to constitute an abuse of discretion. See Hankton v. State, 23
S.W.3d 540, 546-47 (Tex. App.—Houston [1st Dist.] 2000, pet. ref’d).
          Accordingly, we overrule appellant’s sixth point of error.
Conclusion
          We affirm the judgment of the trial court.
 
                                                                        Tim Taft 
                                                                        Justice

The panel on remand consisted of Justices Hedges, Mirabal,


 and Duggan.




En banc consideration was requested. See Tex. R. App. P. 41.2(c).

A majority of the Justices of the Court voted for en banc consideration. See id.

The en banc Court consists of Chief Justice Radack and Justices Hedges, Taft,
Nuchia, Jennings, Keyes, Alcala, Hanks, Higley, Mirabal, and Duggan. See Tex. R.
App. P. 41.2(a).

Justice Keyes, joined by Justices Mirabal and Duggan, dissenting.

Justice Mirabal, joined by Justices Keyes and Duggan, dissenting.

Publish. Tex. R. App. P. 47.2(b).