IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NOS. 12-04& 72-04






JOHN TUY PHAM and CHANCE DERRICK GONZALES , Appellants



v.



THE STATE OF TEXAS





ON APPELLANTS' PETITIONS FOR DISCRETIONARY REVIEW


FROM THE FIRST COURT OF APPEALS


HARRIS COUNTY





 Keasler, J., filed this dissenting opinion.


O P I N I O N 



 The Court concludes that an attenuation-of-taint analysis is different from a causal-connection analysis. Because the only support for this conclusion is a troublesome
substantive footnote, and the conclusion is in conflict with Supreme Court jurisprudence, I
dissent.

 The United States Supreme Court introduced the attenuation concept over 65 years
ago in Nardone v. United States. (1) There the Court explained that "[s]ophisticated argument
may prove a causal connection between information obtained through illicit wire-tapping and
the Government's proof," but "[a]s a matter of good sense . . . such connection may have
become so attenuated as to dissipate the taint." (2) In other words, an analysis of the "causal
connection" between the violation of the law and the discovery of the evidence is part and
parcel of the "attenuation of taint" analysis. They are one and the same. If the evidence is
obtained as a direct result of the illegal action, then there is a causal connection between the
two. If the discovery of evidence is a remote result of the illegal action, then there is an
attenuation of the taint. The two events are either causally connected or they are attenuated. 
The doctrines are two sides of the same coin.

 We recognized this in Bell v. State (3) when we addressed the "taint attenuation to
determine whether the causal chain between the illegal arrest/first confession and subsequent
events was broken." Later, in State v. Daugherty, (4) we discussed "what Article 38.23(a)
means by 'evidence obtained in violation of' the law." (5) We explained that the "ordinary
meaning" of "obtained" accommodated the attenuation doctrine because "depending on how
removed the actual attainment of the evidence is from the illegality, the ordinary person
would not consider that evidence to have been 'obtained' by that illegality." (6) Even when
evidence would not have been obtained but for an illegality, we said, if the eventual
discovery of the evidence was far removed from the illegality then the evidence would not
need to be excluded "because the ordinary meaning of 'obtained' does not extend to such a
remote, or 'attenuated,' causal relationship." (7) So we, too, have recognized that the
attenuation doctrine encompasses a causal connection analysis.

 But a few years ago in Roquemore v. State, (8) we dropped a mischievous footnote. 
After analyzing whether there was a causal connection between the illegality and the
discovery of the evidence, we then said that "we need not do an attenuation of taint analysis
because the State did not raise the argument." (9) With this footnote, we implied that an
attenuation analysis is separate from a causal-connection analysis. This is not true, of course,
and the footnote itself is dicta, (10) but those facts have not stopped this footnote from having
a negative impact on the law.

 The footnote has certainly confused the First Court of Appeals. On original
submission in Pham, the First Court analyzed whether there was a causal connection between
the illegality and the discovery of evidence, and the court concluded that there was. The
court said the following:

 If the arresting officers had promptly notified appellant's parents of his arrest
approximately two hours before his confession, there would have been time for
them to get to the juvenile processing office at 1200 Travis before the
confession. As in Comer, (11) we cannot say with any degree of confidence that
if appellant had access to his parents or his attorney, he would still have chosen
to confess to the crime. (12) 


Despite the court's analysis, we granted the State's petition and remanded the case for the
Court of Appeals to consider the issue again in light of Gonzales. (13) The First Court was
somewhat perplexed, saying:

 In our original opinion, we conducted a taint-attenuation analysis, tracking 
Comer. This was apparently an insufficient analysis to avoid a remand for
reconsideration in light of Gonzales. (14)


 The court determined from our remand that, "at the outset," it should "determine
whether causal connection and attenuation of the taint constitute separate analyses." (15) It then
found that the case "most clearly demonstrating separate analyses for causal connection and
attenuation of the taint, and the order in which they are to be undertaken, is Roquemore." (16) 
The court concluded that, "[b]ased on Roquemore, and based on the fact that our
attenuation-of-the-taint analysis in Pham I was found inadequate to satisfy a Gonzales
causal-connection analysis, we conclude that there are separate analyses for causal
connection and attenuation of the taint." (17) 

 But the footnote in Roquemore was misguided and misleading. Additionally, a
remand from this Court in light of another case does not necessarily mean that the appellate
court was wrong in its original analysis. It means only that we want the court to consider the
issue again and determine if its analysis needs to be altered in light of the new opinion. In
this case, there was no need for the Court of Appeals to alter its analysis in Pham I. It had
already done an attenuation/causal connection analysis, which is all that Gonzales required.

 In other jurisdictions, it is a given that an attenuation-of-the-taint analysis and a
causal-connection analysis are one and the same. The United States Court of Appeals for the
Tenth Circuit says that "the government must prove, from the totality of the circumstances,
a sufficient attenuation or break in the causal connection between the illegal detention and
the consent." (18) The Eleventh Circuit says that "challenged evidence will be admissible under
the 'attenuation' doctrine if the causal connection between the constitutional violation and
the discovery of the evidence has become so attenuated as to dissipate the taint." (19) The Fifth
Circuit refers to the analysis as the "causal-taint attenuation" analysis. (20) State courts have
held similarly. (21) 

 Once we acknowledge that the attenuation analysis and the causal-connection analysis
are one and the same, the question regarding burden of proof is answered. In Brown v.
Illinois, the United States Supreme Court set forth some of the factors to be considered in a
causal connection / attenuation analysis, then added that "the burden of showing admissibility
rests, of course, on the prosecution." (22) We have also recognized that "the burden of showing
attenuation and thus admissibility rests with the prosecution." (23)

 In both Pham and Gonzales, the appellate court erred in analyzing the causal
connection separately from the attenuation of the taint. The court also erred in placing the
burden of showing a causal connection on the appellants. I would reverse both judgments. 
Because the majority holds otherwise, I dissent.


DATE DELIVERED: June 8, 2005

PUBLISH

1. 308 U.S. 338 (U.S. 1939).
2. Id. at 341.
3. 724 S.W.2d 780, 791 (Tex. Crim. App. 1986).
4. 931 S.W.2d 268 (Tex. Crim. App. 1996).
5. Id. at 269.
6. Id. at 270.
7. Id. 
8. 60 S.W.3d 862 (Tex. Crim. App. 2001).
9. Id. at 875 n.14.
10. See Young v. State, 826 S.W.2d 141, 156 n.5 (Tex. Crim. App. 1991).
11. Comer v. State, 776 S.W.2d 191 (Tex. Crim. App.1989).
12. Pham v. State, 36 S.W.3d 199, 204-05 (Tex. App. - Houston [1st Dist.] 2000)
(Pham I).
13. Pham v. State, 72 S.W.3d 346 (Tex. Crim. App. 2002) (Pham II), citing Gonzales
v. State, 67 S.W.3d 910 (Tex. Crim. App. 2002).
14. Pham v. State, 125 S.W.3d 622 (Tex. App. - Houston [1st Dist.] 2003) (Pham III)
(internal citations omitted).
15. Id. at 625.
16. Id.
17. Id. at 625-26.
18. United States v. Caro, 248 F.3d 1240, 1247 (10th Cir. 2001).
19. United States v. Terzado-Madruga, 897 F.2d 1099, 1113 (11th Cir. 1990).
20. United States v. Causey, 818 F.2d 354, 361 (5th Cir. 1987), rev'd on other grounds,
834 F.2d 1179 (5th Cir. 1987). See also United States v. Wipf, 397 F.3d 677, 684 (8th Cir.
2005) ("challenged evidence derived through police illegality will still be admissible under
the 'attenuation' doctrine if the causal connection between the constitutional violation and
the discovery of the evidence has become so attenuated as to dissipate the taint"); United
States v. Green, 111 F.3d 515, 521 (7th Cir. 1997) ("[e]vidence may be 'sufficiently
distinguishable to be purged of the primary taint' if 'the causal connection between the illegal
police conduct and the procurement of the evidence is 'so attenuated as to dissipate the taint'
of the illegal action"); United States v. Johnson, 626 F.2d 753, 758 (9th Cir. 1980) (stating
that "majority opinion in Dunaway repeatedly emphasizes that it is the 'causal connection'
that is the relevant inquiry in making the attenuation determination").
21. See, e.g., Hornsby v. State, 517 So. 2d 631, 638 (Ala. Crim. App., 1987) (causal
connection may become so attenuated as to dissipate the taint); State v. Tapply, 124 N.H.
318, 326 (N.H. 1983) ("Because of his illegal detention, any statements made by him during
such period must be excluded unless the State shows that there has been a sufficient
attenuation of the original taint to remove the causal connection between the illegal custody
and the statements."); State v. Barry, 86 N.J. 80, 94 (N.J. 1981) ("By focusing on 'the causal
connection between the illegality and the confession,' the attenuation doctrine serves to
indicate when exclusion is necessary to further the purpose of deterrence."); State v. Garcia,
123 S.W.3d 335, 346 (Tenn. 2003) ( addressing "whether the causal connection between an
unlawful seizure and a subsequent consent has been broken, i.e. whether the primary taint of
an unlawful seizure has been sufficiently attenuated").
22. 422 U.S. 590, 603-604 (1975). See also Dunaway v. New York, 442 U.S. 200, 218
(1979).
23. Boyle v. State, 820 S.W.2d 122, 131 (Tex. Crim. App. 1989).